EDWARD S. VAIL, Receiver, etc., Respondent, *v.* RICHARD HAM-
ILTON et al., Appellants.

Under the provision of the General Manufacturing Act (Chap. 40, Laws of
1848, as amended by § 2, chap. 517, Laws of 1864, and chap. 481, Laws
of 1871), authorizing a manufacturing corporation to mortgage its property
upon first obtaining and filing the written assent of the owners of two-
thirds of its capital stock, where the corporation is itself the owner of
a portion of its stock, it cannot give assent for the shares so owned by it
to make up the requisite two-thirds, nor can the assenting stockholders
be deemed to represent a proportionate amount of the stock owned
by the corporation.

As to whether the shares so held by the corporation may be deducted from
the whole number in ascertaining if the assent of the requisite two-
thirds has been obtained, *quære*.

Where the corporation has transferred by assignment, absolute on its face,
certificates of stock so owned by it, as collateral security for debt, the
shares so transferred at least cannot be deducted.

*It seems* that the assignee of such stock is a stockholder within the meaning
of said provision and is entitled to sign the assent.

A receiver of such a corporation may maintain an action to set aside a
mortgage executed by it without the requisite assent of stockholders.

(Argued May 13, 1881, decided May 31, 1881.)

APPEAL from judgment of the General Term of the Su-
preme Court of the first judicial department, entered upon an
order made May 5, 1880, affirming a judgment in favor of the
plaintiff, entered upon a decision of the court on trial at Special
Term. (Reported below, 20 Hun, 355.)

This action was brought by plaintiff, as receiver of the Secor
Manufacturing Company, to set aside a mortgage upon its
property executed by it.

Said company was organized under the act authorizing the
formation of corporations for manufacturing purposes. (Chap.
40, Laws of 1848.) Its capital stock consisted of five thousand
shares, all of which had been duly issued and recorded upon the
books of the company prior to the 1st of January, 1874. In
March of that year, nine hundred and forty shares of this
stock had been transferred to and were then the property of
the company. Afterward and on or before the 22d day of

July, 1874, five hundred of these shares were transferred by the company to F. A. Conkling, for the purpose of securing an indebtedness due by it to him, and were properly entered in his name upon the transfer books of the company. The certificates were delivered to him and recited that he was the proprietor of the five hundred shares. On the 1st day of October, 1874, the company executed to the defendants herein, as trustees, a mortgage upon all its property, real and personal, to secure the payment of its bonds to the amount of $100,000, to enable the company to raise money to meet its obligations, and among other things, to secure such of the trustees. " as have or may make advances or loans, or on indorsements made, or which they may make, for the company." At the same time a written assent to this mortgage was signed by stockholders owning two thousand seven hundred and sixty-four shares of the capital stock of the company, and by the said " Secor Sewing Machine Company " (by " E. Miller, Sec., and L. H. Mace, Pres."), claiming to be a stockholder to the amount of the nine hundred and forty shares aforesaid. Conkling neither knew of nor assented to the mortgage, or that assent was given thereto by any one. The company became insolvent, and plaintiff, in July, 1877, was appointed its receiver; he brought this action to set aside the above mortgage, upon the ground that the necessary assents thereto were not given. The Special Term found that the written assent of stockholders owning two-thirds of the capital stock was not filed, or at any time given, to the execution of the mortgage, and judgment was rendered according to the prayer of the complaint.

*F. A. Paddock* for appellants. Were it not for the restriction imposed by the statute, the company in question could have mortgaged its property as freely as an individual could have done, and without any assent whatever. Whether or not the company can vote upon stock owned by itself is of no importance. (*Greenpoint Sugar Co.* v. *Whitin,* 69 N. Y. 328; *Ex parte Holmes,* 5 Cow. 434; Angell & Ames on Corp. [10th ed.], § 159.) The rights of the pledgor cannot be lost, nor can

his liability be escaped, even if the pledgee causes the stock to be transferred to his own name on the books, so long as the fact appears that the stock is held under a pledge. (*McMahon* v. *Macy*, 51 N. Y. 155.) An action to set aside a mortgage upon the ground, only, that an insufficient number of stockholders assented, may possibly be brought by a stockholder, but not by a creditor or a receiver. (*Greenpoint Sugar Co.* v. *Whitin*, 69 N. Y. 333; *Hyde* v. *Lynde*, 4 Comst. 387; *Curtis et al.* v. *Leavitt*, 15 N. Y. 44; *Royal British Bank* v. *Turquand*, 5 El. & Bl. 248; *Bissell* v. *Michigan Southern R. R. Co.*, 22 N. Y. 269; *Kent* v. *Quicksilver Mining Co.*, 78 id. 159; *Taylor* v. *C. & M. Railway Co.*, L. R., 2 Exch. 390.) The company received benefits from the mortgage, and is, therefore, estopped from claiming that it is invalid. (*Carpenter* v. *Black Hawk Gold Mining Co.*, 65 N. Y. 43; *Whitney Arms Co.* v. *Barlow*, 63 id. 62; Herman on Estoppel, §§ 582, 592; Code, § 275.)

*H. E. Davies, Jr.*, for respondent. A corporation has no right to vote upon capital stock which is in the possession of or owned by the corporation. (*Greenpoint Sugar Co.* v. *Kings County, etc.*, 7 Hun, 48; 69 N. Y. 328.) Trustees who hold in their own name stock for the benefit of the corporation, by which it is issued, are prohibited from voting upon it. (*U. S.* v. *Columbia Ins. Co.*, 2 Cranch's C. C. 266; *Ex parte Holmes*, 5 Cow. 426; *Ex parte Barker*, 6 Wend. 509; *Ex parte Desdoity*, 1 id. 99; *City Bank of Columbus* v. *Bruce*, 17 N. Y. 507; *Am. Ry. Frog Co.* v. *Haven*, 101 Mass. 398; *Monseaux* v. *Urquhart*, 18 La. Ann. 482; *The State, ex rel. Page*, v. *Smith*, 48 Vt. 266.) It cannot be contended that this stock was merged in the general fund of the corporation. (*The State, ex rel. Page*, v. *Smith*, 48 Vt. 266; *City Bank of Columbus* v. *Bruce*, 17 N. Y. 507.) Conkling was the only person who could transfer this stock, he alone could vote upon it, and he alone could subject it to any burden, either by pledge of the stock or by mortgage upon the property it represented. (*Adderly* v. *Storm*, 6 Hill, 624; *Worral* v. *Johnson*, 5 Barb.

210; *Roosevelt* v. *Brown,* 1 Kern. 148; *Stanley* v. *Stanley,* 13 Shep. 191; *Matter of Empire City Bank,* 18 N. Y. 199; *Holbrook* v. *N. J. Zinc Co.,* 57 id. 616; *Ex parte Wilcocks,* 7 Cow. 402; *Germ. Nat. Bank* v. *Case,* Reporter, Oct. 8, 1879, p. 449; *Rullman* v. *Upton,* 96 U. S. 628; *Holyoke Bk.* v. *Upton,* 11 Cush. [Mass.] 185; *Wheelock* v. *Kost,* 77 Ill. 296; *McNeil* v. *Tenth Nat. Bk.,* 46 N. Y. 325; *Leitch* v. *Wells,* 48 id. 585; *Cutting* v. *Damerel,* General Term, First Dept., January Term, 1881; 1 R. S. [Edmunds' 2d ed.], 561, § 6; *In re Directors of L. I. R. R. Co.,* 19 Wend. 37; *In re Directors of Mohawk & H. R. R. Co.,* id. 135; *Ex parte Wilcocks,* 7 Cow. 402; *Matter of Barker,* 6 Wend. 509; *Foster* v. *Townshend,* 12 Abb. Pr. [N. S.] 469; 2 Abb. N. C. 29; 68 N. Y. 203; *Donnelly* v. *West,* 17 Hun, 568; *Osgood* v. *Layton,* 48 Barb. 463; affirmed, 37 How. 63; *Knauth* v. *Bassett,* 34 Barb. 31; *Chautauqua Bk.* v. *White,* 6 N. Y. 236; *Same* v. *Risley,* 19 id. 369; *Scouton* v. *Bender,* 3 How. 185; *Hastings* v. *McKinley,* 1 E. D. Smith, 273; affirmed in Ct. of App., Selden's Notes, 4, 19; Code, §§ 498, 499; *Curtiss* v. *Leavitt,* 15 N. Y. 9, 45, 51; *Porter* v. *Clark,* 12 How. 107; *Bissell* v. *M. S. R. R. Co.,* 22 N. Y. 302; *Atty.-Gen.* v. *Guard. L. Ins. Co.,* 79 id. 272.) The receiver is the proper plaintiff in this action. (2 R. S. 462, 463; *Curtis* v. *Leavitt,* 15 N. Y. 44.)

DANFORTH, J. The persons who became "a body politic and corporate," under the name of the "Secor Sewing Machine Company," were made capable of buying, purchasing, holding and conveying in their corporate name any lands, goods, wares and merchandise, necessary to enable the company to carry on the operations named in their certificate of incorporation. But while a certain limited number of the stockholders, to be called trustees, were empowered in that character to manage this property and the stock and concerns of the company, neither in a corporate capacity, nor through its trustees, was it permitted to mortgage the same without first obtaining and filing " the written assent of the stockholders owning at least two-thirds of the capital stock of such " company.

(Laws of 1848, chap. 40, §§ 2, 3; Laws of 1864, chap. 517; Laws of 1871, chap. 481.) It is noticeable that there is thus called into action, the corporation as an artificial entity, the body of the trustees as its agent, and lastly, the constituent members of the corporation or the several individuals composing it. To each of these a duty is assigned, and to make valid the transaction now before us, it is plain that something more than corporate action was required. The corporation might become a party to the mortgage, and the trustees direct its officers to execute it; but there must still be the assent of the stockholder. The will of the whole body, expressed by vote or resolution, cannot take its place. The name of the corporation is signed to the assent. This, if it amounts to any thing, must be the result of corporate, not individual, action. It was signed by its officers, and their act to bind even the corporation must have been official; it can have no force as representing an individual. As to nine hundred and forty shares, therefore, there is no other assent to the mortgage in question than that of the corporation. The mortgage itself must be deemed a corporate act, and assent thereto by the same body can give it no additional validity. As to those shares assent has not been given. It follows also that as the corporation cannot assent for the stockholders, neither can one stockholder for another; nor can one who assents on the strength of stock standing in his own name be deemed to represent a proportionate amount of the stock owned by the corporation. It is claimed, however, by the respondent that if neither the corporation nor the general stockholders can be deemed to represent, by their assents, the nine hundred and forty shares, they should be deducted from the whole number, and then the assents of the stockholders would be enough. But however this may be with the residue, the shares transferred to Conkling ought not to be so treated. As to them, at least, there was no merger in the general fund of the company. They were, in the first instance, duly issued for value received by it, and might be lawfully repurchased or taken in payment of debts due or otherwise acquired by the corporation. In some way it had become the owner of these

shares, not for the purpose of diminishing its capital stock, but for enjoyment as property. As such they stood upon its books, until in the regular transaction of business the stock was transferred to Conkling. The company had a right to hold it unextinguished, and a right to reissue it. (*City Bank of Columbus* v. *Bruce and Fox*, 17 N. Y. 507.) The facts adverted to show that they availed themselves of this right. It is true the shares were transferred to Conkling as collateral security, but the certificate was absolute in its terms, and he was described therein as owner. He so appeared upon the proper books of the corporation. Under such a title he had power to render the security available by sale to satisfy the debt on default of payment, and until the debt was satisfied he was the one interested in protecting the property represented by the shares, from diversion by liens or preferences improperly created. The company had a right of redemption, and so had an equitable interest in the stock; but upon the defendants' theory they could without redemption overreach the legal title by creating a mortgage, which, when enforced, would extinguish it, and until that event deprive it of value. Conkling had a clear interest in that matter. Except as limited by statute, no stockholder, by any title, could have more, or greater rights, or be subject to other liabilities. He is relieved by statute from personal liability as stockholder. (Laws of 1848, chap. 40, § 16.) He would otherwise be bound for the debts of the corporation, for a creditor need in general look only for the legal title. (*Adderly* v. *Storm & Bailey*, 6 Hill, 624; *Rosevelt* v. *Brown*, 11 N. Y. 148; *In re Empire City Bank*, 18 id. 199.) For the same reason he had a right to vote; his character upon the books of the bank would be conclusive upon the inspectors. (*In re Long Island R. R. Co.*, 19 Wend. 37.) And whether section 17 of the act of 1848 (*supra*) could, under any circumstances, be so construed as to deprive one with such a title from voting, it is not necessary to inquire, for the question does not arise; but it is clear that except for the permission given in that section, even a pledgor could not vote. It has no application to an assent required to be given in writing to a specific act of the cor-

poration, and which, without qualification, the statute requires to be given by a stockholder. Such, we have no doubt, was the character of Conkling as to the five hundred shares in question, at the time of the execution of the mortgage. Including these shares as part of the stock to be represented, the assent required by statute was not given and the mortgage is of no validity. It was, however, an apparent lien upon the property embraced in it; and we concur with the General Term in the conclusion that the action was well brought by the receiver to remove it. (Laws of 1858, chap. 314.)

The judgment appealed from should, therefore, be affirmed, with costs.

All concur, except Folger, Ch. J., absent.

Judgment affirmed.