WILLIAM ASTOR, Respondent, *v.* THE WESTCHESTER GAS–LIGHT COMPANY and Others, Appellants.

*Gas-light company — can only give mortgages to secure debts contracted in carrying on its business — 1848, chap. 37, as amended by chap. 374 of 1872 — A manufacturing corporation cannot give a mortgage without the consent of its stockholders — 1848, chap. 40 — When an illegal transfer of corporate property cannot be attacked by a party thereto.*

November 1, 1880, the plaintiff, The Westchester Gas-Light Company, a corporation formed under chapter 37 of 1848, authorizing the formation of gas-light companies, and the Yonkers Fuel Gas-Light Company, a corporation formed under chapter 40 of 1848, authorizing the formation of manufacturing companies, entered into an agreement with the plaintiff in this action. By this agreement the plaintiff agreed to sell and transfer all the stock of the Westchester Company to the Fuel Company, subject to a mortgage then existing upon its property, and the Fuel Company agreed to guaranty the payment of the interest on the mortgage, and of the principal thereof on or before November 1, 1890. The Westchester Company agreed to lease to the Fuel Company for the unexpired term of its charter, and for any renewal or extended term thereof, all its works, pipes, mains, property rights and franchises, for the yearly rent of one dollar, and the Fuel Company agreed to pay all debts of the Westchester Company then existing, or thereafter to be contracted, including the mortgage. This agreement was carried out.

January 17, 1883, the two companies executed and delivered to the plaintiff a mortgage for $5,000, which recited the making of the prior mortgage and agreement; that it had become necessary for the Fuel Gas Company to make large improvements on the works of the other company, and that the two companies had applied to the plaintiff for the loan. It was executed in pursuance of resolutions of the directors of the two companies. That of the Fuel Gas Company recited that it was necessary "to raise money for the immediate wants of the company." The money was paid to the Fuel Gas Company and used by it. The Westchester Company did not carry on any business after November, 1880.

In an action brought against a receiver of the two companies to foreclose the mortgage:

*Held,* that the money was not borrowed by the Westchester Company for the purpose of carrying on the operations named in its certificate of incorporation (as provided in section 2 of chapter 37 of 1848, as amended by chapter 374 of 1872), and that it could not therefore execute a mortgage upon its property and franchises to secure the payment thereof.

That the mortgage could not be sustained as a mortgage given by the Fuel Gas Company, for the reason that the written consent of the stockholders owning at least two-thirds of its capital stock had not been obtained and filed as required by the act under which it was formed.

That even if the lease and transfer of the property of the Westchester Company might be set aside in a proper action, its validity could not be attacked by the plaintiff in this action, as it appeared that, at the time of the transfer, he owned all the stock of the company, was a party to the agreement and a promoter and prime mover in the transaction.

APPEAL from a judgment, entered upon the trial of this action by the court without a jury.

*S. H. Thayer*, for the Westchester Gas-Light Company and its receiver, appellants.

*Ralph E. Prime*, for Yonkers Fuel Gas Company and its receiver, appellants.

*C. Frost*, for the respondent.

PRATT, J. :

The Westchester Gas-Light Company is a corporation organized in 1875, under chapter 37 Laws of 1848, being the general law authorizing the formation of gas-light companies.

The Yonkers Fuel Gas Company is a corporation organized in 1879, under chapter 40 of Laws of 1848, being the general act authorizing the formation of manufacturing companies.

In October, 1875, the Westchester Company executed and delivered to one Davidson, as trustee, a mortgage upon all its property to secure the payment of fifty bonds of $1,000 each. These bonds, at the date of the transaction, out of which grew this action, were held by the plaintiff who at that time also appears to have held substantially all the stocks of said corporation.

On November 1, 1880, an agreement was entered into between the plaintiff and the said two corporations, by which the plaintiff agreed to sell and transfer to the Fuel Gas Company all the capital stock of the Westchester Company, subject to the mortgage to Davidson, trustee aforesaid. The Fuel Gas Company agreed to guaranty the payment of the interest on the said fifty bonds of the Westchester Company aforesaid, and that the principal of said bonds should be paid by the Westchester Company on or before November 1, 1890.

The Westchester Company agreed to lease to the said Fuel Gas Company for the unexpired term of its charter, and for any renewal or extended term thereof, all its gas-works, pipes, mains, property,

rights and franchise for the yearly rent of one dollar, and upon the further condition that all debts of the Westchester Company then existing or thereafter to be contracted, including the said fifty bonds and interest thereon, should be paid by said Fuel Gas Company ; and the said Fuel Gas Company accepted such conditions and agreed to perform them. This agreement was carried out, the property of the Westchester Company leased to the Fuel Gas Company, and the debts of the former company assumed by the latter. The directors in each company were the same.

On the 17th day of January, 1883, the said two companies executed and delivered to the plaintiff the mortgage in suit. This mortgage was given to secure payment of the bond of the Westchester Company for $5,000, and recites the mortgage to Davidson, trustee, and the agreement aforesaid, and that it had become necessary for the Fuel Gas Company to make large improvements on the works of the Westchester Company, and to extend the mains, and that it had expended in so doing a large amount of money ; that said two companies had applied to the plaintiff for a further loan upon the property of the Westchester Company upon the security therein provided. Then follows a grant from the two companies in the usual form and language of a mortgage to the plaintiff of the mortgaged property, being the property leased by the Westchester Company to the Fuel Gas Company as security for the loan aforesaid. This mortgage was executed pursuant to a resolution adopted at a meeting of the directors of the Fuel Gas Company, held on the 17th January, 1883, which recited that it was necessary " to raise money for the immediate wants of the company."

The money advanced by the plaintiff was paid to the treasurer of the Fuel Gas Company and used by it.

In the view that I have taken of this case, it may also be assumed as a fact that the directors of the Westchester Company authorized said mortgage. The directors were the same individuals in each company, and while it is a disputed question upon the evidence whether they ever met as directors of the Westchester Company, it clearly appears that it was their intention so to do. The officers who executed the mortgage swear in the acknowledgment to the instrument, that such a meeting was held and two witnesses on the trial so testified.

This action was brought to foreclose the latter mortgage, and the receiver of the said two corporations (both now being insolvent) attacks the validity of the instrument. This defense is properly made by the receiver. (*Vail* v. *Hamilton*, 85 N. Y., 453.) I think the mortgage cannot be sustained as a valid instrument. The general law authorizing the formation of gas-light companies, as finally amended by chapter 374, Laws of 1872, authorizes a corporation formed under this act to borrow money for the purpose of carrying on its business or " operations," and to mortgage its property and franchises to secure payment of debts contracted by it for the purpose of its business as set forth in its certificate of incorporation.

It appears to me clear that the money raised upon this mortgage was not a debt of the Westchester Company. When the statute speaks of a debt it means a debt that could have been enforced against said company, but this debt had not been contracted by the Westchester Company, neither was it in any way liable therefor. The debt had been incurred by the Fuel Gas Company in improving the property and extending mains, and it was liable for it, and the mortgage so recites. Neither can it be said that the money was borrowed by the Westchester Company for carrying on its business. It was not engaged after November, 1880, in carrying on any business; it had transferred all its property and franchises to the Fuel Gas Company for the unexpired term of its charter, and for any renewal or extended term which it might have, and this transfer, although under the form of a lease, was an absolute surrender of all its property during the life of the company.

The testimony is to the effect that after November, 1880, no business was carried on. The president testified that " it then actually stopped the exercises of any of its franchises or privileges and all its business stopped so far as the exercise by that company of any of its franchises. It had a nominal existence." And this evidence is not contradicted. It appears therefore that the money was not borrowed for any of the purposes for which the Westchester Company was incorporated, nor to raise money to pay any of its debts, and as these are the only two purposes for which the corporation was authorized to mortgage its property, it follows that the mortgage was *ultra vires* and therefore, as to the Westchester Company, void.

The Fuel Gas Company being organized under chapter 40, Laws of 1848, had no authority to mortgage any of its property without the written consent of stockholders owning at least two-thirds of the capital stock being first obtained and filed in the office of the county clerk. It is conceded in this case that no consent of the stockholders .of the Fuel Gas Company ever was obtained to the execution of this mortgage, and if the instrument is to be regarded as a mortgage of the latter corporation it is concededly void.

It is sought to uphold it, however, as a mortgage solely of the Westchester Company, and it is argued that the effect of the acts of the Fuel Gas Company are to be construed and interpreted as a consent that the mortgage takes precedence of the lease to the latter company. I regard this theory as an attempt to evade the law and escape the prohibition of the statute. But even if it were true, it would not, in the view I have taken of the case, save the mortgage, unless it can be upheld as a valid mortgage of the Westchester Company, and must, of course, fail as a lien upon the property.

But all the evidence shows the transaction to have been to raise money to pay the Fuel Gas Company's debt.

The resolution of the latter company, passed on the day the instrument was executed, authorized " a mortgage to be executed on the Westchester works and all mains laid or to be laid," and it empowered the president and secretary " to execute, under the seal of the company, such mortgage."

The mortgage on its face is a grant of the Fuel Gas Company's property. The resolution authorizing it recites that the money is needed " for the immediate wants of this company," and the money when paid over by the plaintiff was paid directly to the Fuel Gas Company and used by it in its business. Nowhere is it spoken of as a mortgage to the Westchester Company, and nowhere is it mentioned that the Fuel Gas Company consented to it being a lien preceding its lease. Clearly it was a transaction of the Fuel Gas Company mortgaging its own property to pay its own debt, and so little regard was paid to the Westchester Company in the transaction that it is left in some doubt whether there was ever any meeting of the directors of that company to authorize the execution of the instrument, and being a mortgage upon the property of the

Fuel Gas' Company it is absolutely void without the assent of the stockholders. ( *Vail* v. *Hamilton*, 85 N. Y., 453.)

The claim that the lease to the Fuel Gas Company was void, and therefore the title to the property never passed to the Fuel Gas Company, cannot be successfully invoked in this action. It may be that in a proper action this lease and transfer of the property by the Westchester Company would be set aside. (*Copeland* v. *Citizens Gas Co.*, 61 Barb., 60 ; *Abbot* v. *Am. Hard Rubber Co.*, 33 id., 578.)

But so far as the evidence of the plaintiff shows, the plaintiff was the owner of all the stock in the Westchester Company. He was a party to the agreement which authorized the lease and consented to the same. While the trustees of a corporation would have no power to dispossess the stockholders of the property and do any act which would work the political death of the corporation, yet if such action has been taken by the directors with the assent of all the stockholders, the transfer of the property would be valid ; at least the plaintiff cannot now be allowed to question or attack the lease, as he appears not only to have assented to the arrangement, but to have been the promoter and prime mover in the transaction.

We think there was no authority shown for the execution of the mortgage and that the judgment should be reversed, with costs.

Present—BARNARD, P. J., and PRATT, J. ; DYKMAN, J., not sitting.

A reargument was ordered at this term. At the next (December) term judgment was ordered in accordance with the above opinion.

BROWN, J., sitting in place of DYKMAN, J., and concurring with PRATT, J. ; BARNARD, P. J., dissenting.