THE ONOMEA SUGAR CO. *vs.* H. C. and F. H. AUSTIN.

APPEAL FROM DECISION OF PRESTON, J.

JANUARY TERM, 1886.

JUDD, C. J.; McCULLY and PRESTON, JJ.

The Onomea Sugar Co., having accepted a charter, and organized by election of officers and adoption of by-laws, held to be a duly and legally organized and existing corporation.

Defendants' assignor, being the owner of all the stock in the Onomea Sugar Co., sold it to C. Brewer & Co., to cover the corporation's debt to them, and C. Brewer & Co. agreed to sell it back to him within a year for the amount that the account stood them in, with interest; held that C. Brewer & Co. had the right to vote the stock while they held it.

Officers of the corporation of C. Brewer & Co. held not to be disqualified from holding office in the Onomea Sugar Co.

Judgment affirmed.

OPINION OF THE COURT, BY McCULLY, J.

The bill prays for an injunction. It is brought by J. O. Carter, as President of the plaintiff company. The injunction was issued by Mr. Justice Preston, to whom the bill was addressed in the first instance.

The real issues involved in this suit and another in which the several parties in interest herein are likewise concerned, are stated in the following stipulation executed by their counsel.

Matters of fact or evidence, and points of argument necessary to to be stated, in addition to those set forth in the stipulation, will be stated in their place in the opinion:

### STIPULATION.

" It is stipulated and agreed by counsel for complainant and respondents that at the hearing of the appeal from the order of Mr. Justice Preston refusing to dissolve the injunction issued in this cause, before the full Court in Banco, the following questions of law shall be passed upon by the Court: •

" 1. Is there any such corporation as the Onomea Sugar Co., duly and legally organized and existing ?

"2. Had C. Brewer & Co., or any person on its behalf, any right to attend meetings of the stockholders of the Onomea Sugar Co., and to vote at such meetings, by virtue of the transfer of shares made to them by S. L. Austin on the 14th day of October, 1884 ?

"For the purpose of enabling the Court to make a decision upon the above points, the following documents may be produced and considered as in evidence, and the following facts are agreed upon :

1. The charter of the Onomea Sugar Co.

2. All books of the Onomea Sugar Co.

3. The certificates of shares issued to S. L. Austin, and the indorsements and the certificates issued to C. Brewer & Co.

4. The conveyance from S. L. Austin to defendants of his right to redeem the shares transferred to C. Brewer & Co.

5. Deed from S. L. Austin et al. to the Onomea Sugar Co.

6. Charter of C. Brewer & Co.

"It is agreed that Herbert C. Austin and Franklin H. Austin were not present at the meeting held to organize the Onomea Sugar Co. in person, but that H. C. Austin was represented at said meeting by Jona. Austin, his proxy ; that the officers elected at the meeting held October 21, 1882, were regularly elected, provided said company was regularly and formally organized; that the transfer of shares by S. L. Austin to C. Brewer & Co. was recorded on the books of the Onomea Sugar Company before the election of officers claimed to have been held on November

12, 1884, but without knowledge or express authority of S. L. Austin, except as such record and the right to make the same was authorized by said transfer to C. Brewer & Co.; that all notices required by law or the charter of said company, relating to said meeting of November 12, 1884, were duly given, and a list of the officers claimed to have been elected at said meeting was duly published in the *Saturday Press* for four weeks.

"The decision of the above questions ·shall be binding also upon the parties in the suit of *S. L. Austin et al vs. C. Brewer & Co.*, but the right of complainants in the last mentioned suit to redeem said shares shall not be finally decided upon this submission, and the Court shall go into the nature of the transaction upon the transfer of said stock only so far as is necessary to determine who had the right to vote the shares on November 12, 1884, and to that extent only shall the decision of the Court herein be binding upon the parties in the suit of *S. L. Austin et al. vs. C. Brewer & Co.*"

The first question of the legal existence of the plaintiff, as a corporation, was not raised before the Court below.

The defendants' contention is that the charter was never legally accepted by the petitioning corporators.

Upon examining the charter before us, we find the preamble to state that:

"Whereas, Stafford L. Austin, Herbert C. Austin and Frank H. Austin, of Hilo, etc.," have duly applied, but the granting part reads, "hereby make, constitute and appoint the said Stafford L. Austin, Herbert C. Austin, and their associates and successors, a body corporate." It must then be considered that the original corporate members were the only two individuals named in the grant.

By the record book of the corporation it appears that, October 21, 1882, the day following the date of the charter, there was held a meeting of the subscribers to the stock of the company, at which were present S. L. Austin in person and H. C. Austin and F. H. Austin by proxy to Jonathan Austin. The stipulation admits only the presence of H. C. Austin by proxy. F. H. Austin not being, however, a charter member, the whole of the incorporators were present in person or by proxy. Counsel for

defendants claim that a proxy sufficient to authorize a representation for an absent stockholder to vote at subsequent meetings would not authorize him to act for his principal at the first meeting of the incorporators. But this proxy was given for the purpose of action in the first meeting of the company, when the acceptance of the charter was the first business and a necessary preliminary to organization. The provisions of Sections 1429 and 1430 of the Civil Code authorize the action by proxy without any restriction. But, say defendants' counsel, no stock had then or since been issued to H. C. Austin or F. H. Austin. The record of the meeting, however, makes him a subscriber for 2,400 out of the 24,000 shares.

Next it appears that H. C. Austin, having been a partner in one-tenth with S. L. Austin, joins in the deed conveying the real and personal property of the plantation to the corporation. Following that, we find the defendants throughout their answer admit the existence of the corporation, only denying the validity of the election of the present officers. And until subsequent to the election of October, 1884, the defendants have been holding employments on the plantation under the appointment of S. L. Austin, as President of this corporation. They claim in this answer to be "members of the legal, though artificial, entity of the Onomea Sugar Co."

Under these facts, it might be sufficient to hold that these defendants are estopped from denying the existence of this corporation. But we go further than estoppel as to these parties. It is established as to everyone, and for all purposes, that the charter members of the proposed company duly accepted their charter, and thereupon organized by the election of officers and adoption of by-laws, and so acquired the privileges and incurred the responsibilities of a corporation. Force is to be given to continued action and to acts of acceptance and ratification.

Angell & Ames on Corp., Ch. 2, Sec. 8 ; *Bank of U. S. vs. Dandridge*, 12 Wheat. 71 ; *Rex vs. Amery*, 1 Term R. 575.

The second question is of the right of C. Brewer & Co., or any person on its behalf, to vote on stock transferred to them by S. L. Austin.

It appears that the entire stock, consisting of 24,000 shares,

had been issued to S. L. Austin, and on October 14, 1885, he transferred this to the corporation of C. Brewer & Co., to cancel the indebtedness existing, and necessary to be presently incurred, by writing on the back of each of the two certificates which represented these shares, the words, "Sold to C. Brewer & Co., as of October 1, 1884," signing the indorsement and delivering the certificates.

C. Brewer & Co. then executed and delivered to S. L. Austin the following instrument:

"HONOLULU, October 14, 1884.

"S. L. AUSTIN, ESQ., PRESENT—*Dear Sir:* As you sold and transferred to us the entire amount of stock in the Onomea Sugar Company for amount of its debt as of October 1, 1884, estimated to be as follows, viz:

Book acct. General acct., October 1........................$ 63,530 92
"         Special      "      "      ........................  4,610 89
Bonds, due May, 1884...... ................................  25,000 00
"      "      "   1885....................................  25,000 00

                                                              $118,141 81
Less estimate value of sugar in hand.....................  10,756 41

Estimated total debt October 1, 1884.....................$107,385 40

"In settlement of which you have sold us all of the stock in the Onomea Sugar Company, thereby cancelling all agreements now outstanding on account of Onomea Sugar Company, so far as you are personally concerned. Say certificates No. 2, for 22,500 shares and No. 3, for 1,500 shares, making a total of 24,000 shares of stock.

"We agree to sell back to you all the stock of the Onomea Sugar Company in our possession at any time up to October 1, 1885, for the amount that the account stands us in at the time of the sale to you, charging interest at the rate of ten per cent. (10 per cent.) per annum on all debts and the same rate of interest on all credits from sales of stock or dividends. We to have the privilege during the time of selling stock up to a fraction less than one-half of the whole stock, applying the sales of stock made by us and the dividends on our part of the stock to reducing the accounts.

"We also agree to pay you the sum of two thousand dollars ($2,000) from October 1, 1884, to October 1, 1885, payable in monthly installments of $166 66, the same to be paid on the 1st day of each month, and to be charged by us as part of the expenses of the Onomea Sugar Co.

"Yours, etc.,

C. BREWER & COMPANY,

By its President, P. C. Jones, Jr.

C. BREWER & COMPANY,

By its Treasurer, J. O. Carter."

The privilege of buying back was assigned to these defendants by the following endorsement on the above agreement:

"For and in consideration of the sum of one dollar ($1 00) to me in hand paid, and in consideration of the fact that a considerble amount of the stock conveyed to C. Brewer & Co., as per the within statement of agreement actually belonged to them, I hereby grant, make over and sell all my right to redeem and buy back the controlling interest in Onomea Sugar Company to my sons, Frank Hale Austin and Herbert Clark Austin."

"Onomea, December 10, 1884.

(Signed)          S. L. AUSTIN."

Another assignment of later date was also introduced in evidence. It is fuller in its terms, but does not convey more than this is intended to convey, and we do not think it need be cited, as relating to a transaction between other parties than those before the Court. The instrument from Brewer & Co. to S. L. Austin cannot be interpreted by any construction given it by S. L. Austin in assigning his rights.

The stock was transferred on the stock book and new certificate issued to C. Brewer & Co., November 12, 1884, the certificate being signed by the officers elected by their voting on this stock at the meeting of that date.

The contention of the defendants is that this transaction constitutes a mortgage, or, if it be preferred, a mere pledge of stock, and that the right of voting remains in the mortgagor or pledgor, citing:

Jones on Ch. Mort., Sec. 1-19; *Polhemus vs. Trainer*, 30 Cal., 685; *Beecher vs. Wells Man. Co.*, 1 McCrary, 62; *Brewster vs.*

*Hartley*, 97 Cal., 15 ; *Powell vs. Thompson*, 3 Cranch C. C., 428 ; *Ex parte Willcocks*, 7 Cowen, 402; *Ex parte Parker*, 6 Wend., 509 ; Jones on Pledges, Sec. 441 ; *Strong vs. Smith*, 80 N. Y., 637 ; Wood's Field on Corp., 99 ; 1 Abbott's Digest Corp., p. 309 ; Angell & Ames on Corp., Sec. 132 ; Morawetz on Corp., 360.

For the plaintiff it is claimed that the character of the holding of the stock by C. Brewer & Co. gave them the right to vote it, citing :

*Bank vs. Case*, 99 U. S., 631 ; *Burgess vs. Seligman*, 107 U. S. 20 ; *Pullman vs. Upton*, 96 U. S., 330 ; *Nat. Bank vs. Watsontown Bank*, 105 U. S., 217 ; *Crease vs. Babcock*, 10 Met., 545 ; *Rosevelt vs. Brown*, 11 N. Y., 149 ; *Trust Co. vs. Ins. Co.*, 18 N. Y., 199 ; *Nail vs. Hamilton*, 85 N. Y., 453 ; *R. R. Co. vs. Stewart*, 41 Pa. St., 54 ; *Hoppin vs. Buffum*, 9 R. I., 513 ; *Bank vs. Hingham M. Co.*, 127 Mass., 563.

In the great variety of cases involved in the foregoing citations, we believe there is no conflict of authority in respect to the proposition that a stockholding which carries with it a liability to the extent of unpaid balances on shares, gives with it a right to vote.

In *Burgess vs. Seligman*, 107 U. S., 20, it appears that by force of a Missouri statute exempting the holders of stock as collateral security from liability for the debts of a corporation, there might be a right to vote, although there is no liability corresponding, this right existing even on stock issued by the corporation as collateral security.

In *National Bank vs. Case*, 99 U. S., 631, the Court say, "It is thoroughly established that one to whom stock has been transferred in pledge or as collateral security for money loaned and who appears on the books of the corporation as the owner of the stock, is liable as a stockholder for the benefit of the creditors. Having taken the legal title, he has released the former owner— he has taken the apparent ownership and thus become entitled to receive dividends, vote at elections, etc." In this case the responsibility was enforced on the defendant stockholders, although it had been transferred colorably to one of its clerks. The circumstances of the following case, much relied on by defendant's counsel, are substantially unlike the case before us.

70

*Vowell vs. Thompson*, 8 Cranch, 428, was a bill in equity to compel the defendant to give the plaintiff a power of attorney or proxy to vote at an election of directors upon 800 shares of stock transferred by the plaintiff in trust as a collateral security for a debt, the plaintiff being in no default and the stock not forfeited; *held* that until foreclosure or sale under the mortgage, the mortgagor is entitled to vote, and the Court will compel the mortgagee to give him a power.

In our case it is to be observed that the limited right to receive dividends by crediting the amount to the vendor's debit account was reserved by express agreement in the defeasance, but there is no stipulation reserving the right to vote.

We may ask for how long could it be considered that the right to vote remained with the vendor here. The terms of the sale were unconditional. The defeasance agreement, after reciting that the stock is sold and transferred in settlement of the debt of the company as to his personal liability, agrees to sell back within a year all stock which may remain in the hands of C. Brewer & Co. at cost and interest, but with the privilege of selling within the year a fraction less than one-half the shares. What interest remained in S. L. Austin? Clearly, no legal interest. He had only a right up to the first of October, 1885, to purchase an interest on certain terms, and he had not purchased. The question is not affected by the stock being paid up or not. Either kind of stock may be mortgaged, pledged or conditionally sold.

In case of a sale of partially paid stock made in the terms and with the conditions of this, it is clear that the purchaser and holder would be held liable for corporation assessments and debts, and that the vendor would not be looked to. Reason and authority are that the responsible party has the vote, and has it from the date of the transfer. The privilege of repurchase may not be exercised. Nothing remained to be done to vest the title of the stock in C. Brewer & Co.

*Ex parte Willcocks*, 7 Cowen, 411, is relied on by defendant's counsel as a leading case in support of his position. In our view it is directly adverse to it. The Court say, "Hypothecation is conventional and implies the power of rendering the subject

available by way of sale to satisfy the debt on default of payment. The stock stood on the transfer book in the name of the voters. This is generally conclusive upon the inspectors and we consider it so in this case. But we do not hesitate to say that in a clear case of hypothecation the pledgor may vote. The possession may well continue with him consistently with the nature of the contract and the stock remain in his name. Till enforcement and the title made absolute in the pledgee, he should be received to vote."

*Barker's Case*, 6 Wendell, 509, follows the same line, holding that hypothecated stock standing in the pledgee's name may be voted by him. To the same effect is Jones on Pledges, Sec. 441, and in all the authorities cited we find no support for the proposition that stock sold and transferred on the books can be voted by the vendor.

The legal title had passed. The legal time for repurchase had elapsed. Shares sold by Brewer & Co. would undoubtedly have carried the right to vote. The whole shares in the hands of Brewer & Co. must be considered to have the same right. One election of officers had been made under this right; the second, when the present officers were elected, was held after the lapse of the year during which it was agreed that S. L. Austin might buy back the unsold shares in the hands of Brewer & Co., at cost and interest. In our opinion, the right to vote was complete.

Upon the argument before us, Mr. Ashford, of the defendant's counsel, made a third proposition, viz: That as it appears that Messrs. Jones and Carter are officers of the corporation of C. Brewer & Co., whose interests are hostile to those of the Onomea Sugar Co., they were, and are still, disqualified from holding office in the Onomea Sugar Co.

It seems to us that our decision upon the above second point carries with it the decision on this point. If Brewer & Co. be considered the shareholders of all the stock in the company, how can they be considered as hostile to themselves. The ground of hostility or adverse interest must be taken to be that they were creditors of the company, and the sole creditors. Now, it must be considered that their interest was in the Onomea Sugar Co. being prosperous and valuable. Neither would this be an interest hostile to the vendor of the stock, for however valuable it might become,

he had the privilege of buying it back at cost, and if the man- agement of C. Brewer & Co. made it worth less, he was under no obligation to take it. The cases cited in support are dissimilar to this in that they are not cases where the alleged hostile or ad- verse interest is the owner of the whole stock which might be affected by his dealings. We agree with the language of the Ohio case cited in Morawetz, Sec. 245 : "A director whose per- sonal interests are adverse to those of the corporation, has no right to be or act as a director—as soon as he finds that he has personal interests which are in conflict with those of the company he ought to resign." These directors had no interests hostile to the Onomea Company, and we think none hostile to the former holder of the stock.

Following the argument of Mr. Ashford, Mr. Thurston, as counsel for defendants, submitted argument, chiefly based on the proposition that defendants were in possession of the plantation claiming right of possession and should not be ejected by an ex- parte injunction. An examination of the whole record does not sustain the premises of this argument. It is in proof in the case of *Stafford L. Austin vs. C. Brewer & Co.*, and in this case, that H. C. Austin was appointed manager of the plantation by the Directors of the Onomea Sugar Co., November 12, 1884. He has held as manager, drawn his drafts and exercised all the functions of a manager. He is not now, and never has been, the holder of stock in the company. In no view can he be considered as an adverse holder under claim of right and possession. The Court below had before it, as we now have in review, the whole pleadings and proofs in the several cases concerning these parties, and it was bound to consider them as affecting this particular case.

The petitioners made a sufficient showing that the defendants, being servants of the plaintiff company, were asserting claims and committing acts not in consonance therewith, which the plain- tiff was entitled to have restrained by injunction.

We confirm the judgment of the Court below.

*F. M. Hatch*, for plaintiffs.

*Ashford & Ashford* and *L. A. Thurston*, for defendants.

Honolulu, March 12, 1887.