## STOTT v. STOTT REALTY CO.

1. CORPORATIONS—ULTRA VIRES—ERECTION OF BUILDINGS IS WITHIN POWER TO HOLD AND DEAL IN REAL ESTATE.

   The erection of buildings for income purposes is fairly included in the power to hold and deal in real estate and is a reasonable and germane incident to the express powers of a corporation organized for the purpose of purchasing, holding, selling, and dealing in real estate.

2. SAME—MORTGAGES—VALIDITY—CONSENT OF STOCKHOLDERS.

   Where the board of directors of a corporation approved a loan and authorized the execution of a mortgage, and at the annual

On power of directors to remove their own appointee who is one of a class of officers to whom the management of the business is confided, see annotation in 23 L. R. A. (N. S.) 1293.

stockholders' meeting former resolutions authorizing the loan were ratified by a two-thirds vote of the stockholders and stock present and representing a majority of all the stock, and at a later date stockholders representing over two-thirds of the total stock executed written consent to said loan, the requirements of the act (Act No. 84, Pub. Acts 1921, as amended by Act No. 335, Pub. Acts 1927, pt. 2, chap. 2, § 12) were met, and the mortgage was therefore valid.

3. SAME—WITHDRAWAL OF STOCKHOLDERS' CONSENT TO MORTGAGE. Withdrawal of consent by a stockholder to the execution of a mortgage by a corporation is not effective unless it is by vote at a proper meeting or written notice filed with the corporation, since the proper and orderly conduct of corporate business demands that withdrawals of consent shall go through the same channel as the consent itself.

Appeal from Wayne; Dunham (Major L.), J., presiding. Submitted January 23, 1929. (Docket No. 61, Calendar No. 34,145.) Decided March 29, 1929.

*Edward N. Barnard,* for appellant.

*Friedman, Meyers & Keys,* for appellees.

FEAD, J. Stott Realty Company is a corporation organized for the purpose of "purchasing, holding, selling, and dealing in real estate." The stock, except six shares held by T. P. Danahey, manager of the company, is divided approximately equally among seven brothers and sisters. The company

owned property at the southeast corner of Griswold and State streets, in the city of Detroit, on which was the Hodges building, old, out of condition, and not productive in proportion to ground value. As early as 1920, the board of directors considered the erection of a new building on the site. It was discussed from time to time, considerable preliminary work done and advice obtained, and the project became ripe for action in the beginning of 1928. Plaintiff knew of the plan for some years, sometimes agreed to it and sometimes objected. A special stockholders' meeting was called for January 9, 1928, to authorize the project, and plaintiff attended. The meeting was adjourned several times on the same day, and finally adjourned to January 11th, at which time the stockholders, holding two-thirds of the shares, adopted resolutions authorizing the building and empowering the board of directors to borrow $1,300,000 on mortgage from the Northwestern Mutual Life Insurance Company. Plaintiff did not attend the latter meeting. He claimed he had been promised notice of it by Mr. Danahey and that such notice was not given him. On January 11th, the board of directors met and adopted a resolution approving the loan and authorizing execution of the mortgage by the officers. On January 25th, at the annual stockholders' meeting, the former resolutions, authorizing erection of the building and the mortgage loan, were ratified by a two-thirds vote of the stockholders and stock present and representing a majority of all the stock, but, Ernest Stott being absent, and plaintiff and Julia Stott voting in the negative, the vote was not by two-thirds of the total shares. On February 7, 1928, six of the stockholders, among them Ernest Stott, representing over two-thirds of the total stock, executed a written consent

to the borrowing of $1,300,000 from the Northwestern Mutual Life Insurance Company upon mortgage covering the property. On the same day the plaintiff filed this bill of complaint to enjoin the corporation from tearing down the Hodges building and applying any of the assets of defendant corporation to the erection of the new building or to the reduction of the mortgage.

The company owned the Broadway-Strand Theatre. It having become vacant, the company undertook to conduct it as a going theatre until a tenant could be secured. Plaintiff also asked for an injunction restraining the operation of the theatre by defendant corporation.

Preliminary injunction was denied by the court. Defendant immediately began demolition of the Hodges building, and at the time of hearing it had been entirely torn down and the new building was well along to completion, but the mortgage had not yet been executed. It was executed shortly after decree dismissing plaintiff's bill of complaint. Defendant corporation had leased the Broadway-Strand Theatre to a tenant, had ceased operating it, and this issue needs no further consideration.

The testimony developed a family controversy. A large amount of testimony was taken, but it will not be necessary to outline it. The issues are few and comparatively narrow. Plaintiff's contention that the building project was unwise, unwarranted, a result of gross mismanagement on the part of the majority of stockholders and directors, and waste of corporate funds, was not sustained by the evidence.

Plaintiff cited no authorities nor adduced any reasoning in support of his claim that the erection of the building was *ultra vires* of the corporation. The company had always held property for income,

and had expended large sums in improvements and alterations. This project was in harmony with the general conduct of the business, even though it in-·volved greater expenditure than former operations and a large, long-time mortgage. We think the erection of buildings for income purposes is fairly included in the power to hold and deal in real estate and is a reasonable and germane incident to the express powers of the corporation. *Richardson* v. *Massachusetts Charitable Mechanic Association,* 131 Mass. 174.

Plaintiff further contends that the mortgage was not lawfully authorized under Act No. 84, Pub. Acts 1921, as amended by Act No. 335, Pub. Acts 1927, pt. 2, chap. 2, § 12, which provides:

"Every such mortgage, except purchase money mortgages, shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation, which consent shall be given either in writing, or by vote at any annual meeting or a special meeting of the stockholders called for that purpose, and upon the same notice as that required for annual meetings of the corporation; and the certificate under the seal of the corporation that such consent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed and acknowledged by the president or a vice-president and by the secretary or an assistant secretary of the corporation and shall be filed and recorded with the instrument."

The statute contemplates both official action by the corporation and personal action by individual stockholders. *Vail* v. *Hamilton,* 85 N. Y. 453. It does not require that corporate action be by stockholders representing two-thirds of the shares, but a majority corporate action is sufficient. It merely

superimposes on the regular corporate action the requirement of personal consent of holders of two-thirds of the stock expressed either by vote or separate written instrument. Regardless of the legal sufficiency of the stockholders' meeting of January 11th and of plaintiff's notice thereof, the board of directors approved the mortgage and the stockholders, at the regular meeting of January 25th, ratified the former resolutions, thereby fulfilling the requirement of corporate action to authorize the mortgage. The necessary individual action was consummated by the written consent of February 7th, executed by stockholders representing two-thirds of the stock.

On March 10, 1928, Ernest Stott, who had at the meeting of January 11th voted for the execution of the mortgage and on February 7th executed the written consent thereto, sent a letter to the agent of the Northwestern Mutual Life Insurance Company, who was negotiating the loan with defendant, in which he stated:

"In reference to the consent I signed to the Northwestern Mutual Life Insurance Company mortgage, if you have not advanced any money I desire to withdraw my name to the consent."

The effect of this attempt at withdrawal presents the only serious question in the case, if it is open to plaintiff, under *Schwier* v. *Atlas Assurance Co.,* 227 Mich. 104. No authorities of help have been cited or found. The statute clearly contemplates that the consent shall be given to the corporation and shall be evidenced by vote appearing on its records or writing in its files so that the corporation may execute the proper certificate to be recorded with the mortgage. The statute does not provide for withdrawal of consent once given. If permissible in any

circumstances, the proper and orderly conduct of corporate business demands that withdrawals of consent shall go through the same channel as the consent itself. A withdrawal of consent is not effective unless it is by vote at a proper meeting or written notice filed with the corporation. No such notice was filed by Ernest Stott and his attempted withdrawal was not of force.

Counsel for plaintiff suggests that after the hearing of this cause, another stockholder, Julia Stott Orloff, withdrew her consent to the mortgage, and, when executed, it was not authorized by even a majority of the stock. The situation at the time the mortgage was executed was not shown in this record and the issues thereon must be disposed of in the case in which they are raised. Upon the facts here the erection of the new building was within the powers of the corporation, the execution of the mortgage was lawfully authorized, and the plaintiff is not entitled to an injunction.

Decree dismissing the bill is affirmed, with costs.

NORTH, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.