## THE CITY BANK OF COLUMBUS *v.* BRUCE and FOX.

In the absence of prohibition by statute, a corporation may purchase its own stock, hold it unextinguished and reissue the same.

Whether such purchase operates to diminish the capital stock, is a question of intention. It may have that effect at the option of the corporation, and this may be inferred from circumstances.

A foreign moneyed corporation, with a capital limited by charter and fully paid up, received its own stock, to the amount of $133,000, in payment of debts. It subsequently resolved to increase the capital stock $90,000, and to receive subscriptions for that amount. The defendant gave his note on a subscription for stock; *Held*, that the corporation intended a reissue and sale of old stock and not the creation of new, and hence that the note was not affected by certain provisions of the charter relative to original subscriptions which would otherwise have rendered it void.

In an action upon contract a defendant offered as a witness for his co-defendant may be rejected without being sworn, if he is only to be examined as to a matter in which he is jointly interested with the party calling him.

So *held*, where a defendant was offered to prove that the signature of his co-defendant to their joint and several promissory note, given for a joint subscription to the stock of a corporation, was obtained by fraudulent representations as to the solvency of the corporation.

APPEAL from the Superior Court of Buffalo. The action was on a promissory note, in these words:

"$5,000.

"BUFFALO, *November 12th*, 1849.

"Two years after date, on demand, we or either of us promise to pay, to the order of the Columbus Insurance Company, five thousand dollars, with interest at six per cent per annum, payable semi-annually on the first days of June and December of each year, for value received.

"ELIJAH K. BRUCE,

"WATSON A. FOX."

Indorsed: "E. F. DRAKE, Pres't."

Upon the trial before Mr. Justice CLINTON and a jury, the plaintiff proved that it was a banking corporation

organized under the laws of Ohio, and doing business at Columbus, in that state. It was subject to the following restriction, contained in section 64 of "An act to incorporate the State Bank of Ohio, and other banking companies," passed February 24, 1845, viz.: "All notes, bills and other evidences of debt, excepting bills of exchange, discounted by any banking company, shall be made by the terms thereof, or by special indorsement, payable solely to such company."

The Columbus Insurance Company was a corporation created by the laws of Ohio, located and doing business at Columbus. Section 2 of its charter was: "The capital stock of this company shall be one hundred thousand dollars, which may be increased, at the will of the stockholders, to three hundred thousand dollars, divided into five thousand shares of twenty dollars each. At the time of subscribing, there shall be paid on each share five dollars, and the balance of each shall be subject to the call of the directors, and shall be secured by indorsed notes, payable on demand, or other property or stocks."

E. F. Drake was the president of the Columbus Insurance Company, and indorsed the note, by its authority and direction, sometime between October, 1850, and February, 1851, to one Sheldon, as collateral security for a demand which he held against the company. In May, 1851, the plaintiff, at the request of the insurance company, paid Sheldon's demand and received the note from him, crediting an excess in the amount payable by the note over Sheldon's demand, upon an account then existing against the company, in favor of the plaintiff. Demand of payment from the defendants was proved; and the defendants objected to the reading the note in evidence, upon the ground that the plaintiff did not acquire an interest in it, because it was not indorsed to it in accordance with section 64 of the act of 1845, before mentioned. The objection was overruled, and the defendants took an exception.

The defendants proved that the Columbus Insurance Company began business with a capital of $100,000. In 1839, it resolved to increase the capital to $300,000, and during that year additional stock to the amount of $200,000 was subscribed, and certificates therefor issued, for which the company received payment in cash and notes of the subscribers. In 1842, the company resolved that any stockholder indebted to it on stock notes might pay by transferring to the company stock to the amount of $113 for $100 of such indebtedness. Under this resolution, some of the persons who had taken the additional stock issued, as above stated, surrendered their stock to the company, to the amount of about $133,000.

On the 22d May, 1849, the directors of the company resolved to increase the capital stock at least $50,000, and to receive subscriptions thereof under the condition that they were not to become absolute unless the whole amount subscribed should reach the sum of $50,000. Under this resolution subscriptions were received amounting to $27,-000. On the 13th August, 1849, the directors adopted resolutions that the capital stock be increased to $300,000, and that the president and secretary, or such person as they should appoint for that purpose, "be authorized to receive subscriptions of stock to the amount of ninety thousand dollars, or so much as may be necessary to make the capital stock up to three hundred thousand dollars," upon certain terms therein specified, which authorized the reception from subscribers of notes secured by mortgage, indorsement or stocks. On the 25th November, 1849, the secretary exhibited to the board of directors notes received by him under the resolution before stated, for which he had issued stock amounting to $32,000, among which was the note on which this action was brought. The secretary's proceedings were approved by the board. The certificate of stock issued for this note was delivered to the defendant Bruce, and described him as proprietor. The defendants' counsel

produced it to the court, and offered it to be canceled. Evidence was given tending to prove that the company was insolvent at the time the defendants gave the note and took the stock in question, and that its officers and agents knew the fact.    The defendant Fox was then offered as a witness for the defendant Bruce, to prove that the signature of Bruce to the note was obtained by fraudulent representations, which were set forth in the answer of the defendants, made to him by an agent of the company, as to its condition and solvency.    The plaintiff's counsel objected to the examination of the witness upon the point to which he was offered. The judge held that the witness was incompetent, and the defendant Bruce took an exception.    Bruce was then offered as a witness for Fox, to show that his signature to the note had been obtained by such false representations, and the like decision was made and exception taken.    The plaintiff had a verdict, and the judgment rendered thereon having been affirmed at a general term, the defendants appealed to this court.

*John Ganson,* for the appellants.

*Sherman S. Rogers,* for the respondent.

SELDEN, J.    Among the numerous points raised upon the trial of this cause, there are several which, in the view I take of the case, it will be found unnecessary to consider. It is insisted, on the part of the defendants, that the note upon which the action is brought was invalid in the hands of the Columbus Insurance Company, because it was given for a subscription to the stock of the company, without a compliance with the provisions of section two of the charter; which requires, among other things, that at the time of subscribing there should be paid upon each share $5, and that the balance should be secured by indorsed notes, payable on demand, or by other property or stocks to be approved, &c.

The City Bank of Columbus *v.* Bruce and Fox.

These provisions being applicable only to an original subscription for stock, it becomes necessary to see whether the note in question was given upon such a subscription. To ascertain this, it is unnecessary to notice the history of the company prior to 1842. In that year, the company then being in full operation with a capital of $300,000, the amount authorized by its charter, the board of directors met and resolved that any stockholder, indebted to the company on stock notes, might have the privilege of paying any part or all of such indebtedness in the capital stock of the company, at a rate specified in the resolution. Under this authority, stock was surrendered or transferred to the company, in payment of notes, to the amount of $133,000. There seems to be no ground for questioning the validity of this transaction. I am not aware of any common law principle which forbids it, nor is it shown to have been in contravention of any provision of the charter of the company, or any other of the statutes of Ohio. In the case of *Taylor* v. *The Miami Exporting Company* ( 6 *Ohio*, 83 ), it was held that a bank might receive its own stock in payment of a debt, and might hold it as it did its other corporate property.

The subsequent resolutions of the board of directors of the insurance company, viz., that of May 22d, 1849, by which it was resolved to increase the capital stock of the company in the sum of $50,000, and to receive subscriptions for that amount, and that of August 13th, 1849, authorizing similar subscriptions to the amount of $90,000, are to be construed with reference to the circumstances under which they were adopted. As previous to the transfer of the $133,000 of stock to the company, in payment of stock notes, the full amount of stock authorized by the charter had been issued, neither the directors nor stockholders of the company had power to add to that amount. The directors may have supposed that the stock transferred under the resolution of 1842 became *ipso facto* extinguished,

and that the capital of the company was thereby *pro tanto* diminished; but I do not regard that as the necessary consequence of the transfer. It might or might not have that effect, at the option of the company, and would require, I think, some manifestation of such an intent to produce that result. As nothing of this kind was shown, it follows that there was no authority for the issue of any new stock. I see nothing, however, to prevent the reissue and sale by the company of the stock so transferred; and, in the absence of any proof to the contrary, the presumption is, that the directors intended to act within the scope of their powers by selling the stock on hand, instead of issuing new stock, which they had no power to create. The terms used in the resolution are by no means conclusive as to the intent of the directors. They may have adopted the form of a subscription as the best mode of obtaining purchasers for the stock transferred to and held by the company, and there is no positive evidence to conflict with such an inference. All the stock issued to the new subscribers, therefore, should, I think, be deemed a part of the stock so held. This conclusion disposes of several of the points raised by the defendants' counsel. It shows that the requirements of the charter in reference to the original subscriptions have no application to the case. The directors needed no special authority to enable them to transfer the stock. It was clearly within the scope of their powers as the managing officers of the company. There was, therefore, a sufficient consideration for the note.

Another branch of the defence, set up in the answer and relied upon at the trial, was, that the Columbus Insurance Company was insolvent at the time the note was given, and that the note was obtained by the false representations of the agents of the company in relation to its condition. It appears by the bill of exceptions that the defendants gave evidence tending to show that the company was insolvent, and that this was known to its officers and agents. This, however, was clearly insufficient, without evidence of some

The City Bank of Columbus *v.* Bruce and Fox.

misrepresentation or concealment on that subject. To establish this, each of the defendants was offered as a witness by his co-defendant and rejected by the court. It is insisted by the defendants' counsel that, under section 397 of the Code, either defendant was a competent witness to prove that the signature of his co-defendant was obtained by misrepresentation and fraud, and hence that the ruling of the court in this respect was erroneous.

The construction of the section of the Code in question has been settled by a series of decisions in this court, by which it may now be regarded as established that, in all actions *ex delicto*, any defendant may call and examine his co-defendant as a witness, except where several defendants, without denying any material allegation of the complaint, have united in a defence which is in its nature joint. In actions *ex contractu*, also, whenever the issues are such that judgment may pass against one or more of the defendants and in favor of others, any defendant may be sworn as a witness for his co-defendant, unless, from the avowed purpose for which he is called, it appears in advance that if sworn he could not be permitted to testify. The examination of a co-defendant is, by the express terms of the section, limited to matters in respect to which the witness is not jointly interested with the party calling him. It is plain, therefore, that if the issues are such that the judgment to be given must necessarily be joint, or, when the issues are both joint and several, if it appear that the witness, when sworn, is only to be examined as to some matter in which he is jointly interested with the party by whom he is called, he may be rejected without being sworn.

In the present case there were, no doubt, issues upon the record upon which several judgments might have been given in favor of one defendant and against the other; but the bill of exceptions states the precise object for which each of the defendants was called, viz., to prove that the signature of his co-defendant to the note was obtained by

the fraudulent representations set up in the answer. The averment in the answer is, that the Columbus Insurance Company, by its duly authorized agent, applied to the defendants to subscribe for stock, and, as an inducement to them to make such subscription, represented that the company was solvent and in good condition, and that upon the faith of these representations they were induced to subscribe for two hundred and fifty shares of the stock, in payment for which they executed the note in question.

It is quite impossible that this branch of the defence should be sustained as to one of the defendants and not as to the other. The subscription was the joint act of the defendants, and they united in executing the note. If there was any fraud in obtaining the subscription, this must necessarily vitiate the whole transaction. It is of no importance whether the false representation was made to both the defendants, or to one of them only. A joint contract to pay money by two individuals, obtained by a fraud practiced upon one of them, is void as to both. Even where the contract, as in this case, is several as well as joint, still, if one is compelled to pay the whole, he has his remedy against the other for contribution, and, if deprived of this remedy through the fraud of the opposite party, he cannot be holden. It follows that each of the defendants was interested in the question, whether the signature of his co-defendant to the note was obtained by fraud, as, if established, it would constitute a good defence to both. The ruling of the judge, therefore, upon this point, was in strict accordance with the previous decisions of this court.

The only remaining questions which I deem it necessary to consider, relate to the validity of the plaintiff's title to the note. It is insisted that such title is invalid, because the note was indorsed in blank, instead of being made payable to the bank in terms, according to section 64 of the act under which it was incorporated, which provides that "All notes, bills and other evidences of debt, excepting

The City Bank of Columbus *v.* Bruce and Fox.

bills of exchange, *discounted* by any banking company, shall be made, by the terms thereof, or by special indorsement, payable solely to the company."

I am not prepared to sustain this position. The note having been transferred for a full consideration, can no longer be enforced by the Columbus Insurance Company. The defendants have paid nothing upon it, and, unless the plaintiff has the title, there is no one to whom the defendants are responsible. As the provision in question was not designed for the benefit or protection of the parties to the securities, but rests upon general grounds of public policy, there seems to be no good reason why such parties should be allowed to avail themselves of it, to evade their just responsibilities. I am inclined to think that the section should be considered as directory merely, and that a non-compliance with its provisions should not be regarded as affecting the title of the bank, even to those securities to which it clearly applies.

But it is at least doubtful whether the note in suit here comes at all within the terms of the section in question, which relates solely to notes, &c., "discounted" by the bank. This note, together with another note for $5,000, was held by one Sheldon as collateral security for a debt of $5,000 against the Columbus Insurance Company, the general property being in said company. The plaintiff having a claim against the insurance company, paid the debt to Sheldon and took both notes, crediting the balance, over and above the amount due Sheldon, to the insurance company. This cannot, I think, be properly regarded as a discounting of the note, within the meaning of the section in question. As that section relates solely to banking companies, its terms should of course be interpreted according to their ordinary use in the business of banking. The "discounting" of a note by a bank is understood to consist in the lending of money upon it, and deducting the interest or premium in advance. (*Webster's Dictionary, &c.*)

The taking of this note by the plaintiff bears no analogy to such a transaction. No money was loaned upon the note, nor was anything deducted from or taken in advance upon it. The section referred to, therefore, has, I think, no application to the case; and for this reason, as well as that before given, the title of the plaintiff to the note should be sustained.

This conclusion renders it unnecessary to pass upon the question whether the fact that there was no indorsement upon the note at the time of the transfer, showing that the installments of interest then due had been paid, operated as a sufficient notice of the dishonor of the note to prevent the plaintiff from being regarded as a *bona fide* holder, and I refrain from expressing any opinion upon that subject.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.