(87 App. Div. 107.)

### HARTLEY v. PIONEER IRONWORKS.

(Supreme Court, Appellate Division, Second Department. October 22, 1903.)

1. CORPORATIONS—RESOLUTIONS—RIGHT TO VOTE—INTEREST.

Where a corporation, having acquired in its corporate capacity certain of its own stock, proposed to sell the same to three of its directors for a certain price, and to pass a dividend in order to allow the directors to pay therefor, such directors were incompetent to vote on the resolution, in the absence of consent by all persons interested.

2. SAME—CORPORATE RESOLUTION—DECLARATION OF DIVIDEND—CONSTRUCTION.

Defendant corporation, finding itself the owner of 70 shares of its own stock, adopted a resolution that the company would sell the same to the plaintiff and two others who were stockholders at a certain amount per share, and declare a dividend to allow them to pay for the same. A subsequent resolution was passed on the same day, declaring a dividend of $87.39 per share to allow plaintiff and the other purchasers to pay for the 70 shares, and providing that certain other stockholders should apply their dividends toward liquidating a debt to the company. No transfers were, however, made under the first resolution, and thereafter another resolution was passed declaring a dividend, so that the 70 shares at present unissued could be taken up by plaintiff and his associates, the portion of the dividend accruing from their interests to go toward paying for the 70 shares, and the portion of such other stockholders to the indebtedness previously defined, and thereafter each stockholder was credited with a dividend of $87.39 per share, and plaintiff and his associates were credited with the dividend on their interests and also on the 70 shares, after which, on objection being made, the credits were changed so as to make the dividend declared $132 a share on the stock actually issued, excluding the 70 shares. Held, that the stock was sold to plaintiff and his associates ex dividend, and not dividend on, and hence plaintiff was not entitled to recover the additional dividend on his portion of such stock.

Hooker and Jenks, JJ., dissenting.

Appeal from Trial Term.

Action by James Hartley against the Pioneer Ironworks. From a judgment dismissing plaintiff's complaint on the merits, he appeals. Affirmed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

William N. Dykman, for appellant.
Albert G. McDonald, for respondent.

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 1401, 1402.

WOODWARD, J. In October, 1896, William L. Bass, Samuel H. Milliken, and James Hartley were the directors of the Pioneer Iron-works, the 480 shares of stock being owned as follows: Alexander Bass, 122 shares; William L. Bass, 101 shares; Mrs. William L. Bass, 51 shares; Samuel H. Milliken, 92 shares; James Hartley, the plaintiff, 39 shares; Alfred Mecke, 5 shares; and the Pioneer Iron-works, in its corporate capacity, 70 shares. It is conceded that "in or about October and November, 1896, it was agreed among the shareholders and directors of defendant that these seventy shares should be sold, forty-eight thereof to Samuel H. Milliken, twenty thereof to James Hartley, and two thereof to Alfred Mecke, at the price of two hundred and fifty-seven 17/100 dollars per share," but there is nothing said as to an agreement by the interested parties whether these shares of stock, which had been purchased by the corporation, should carry dividends or not. On the 22d day of October, 1896, the directors above named met and adopted a resolution "that the company sell to Messrs. Milliken, Hartley, and Mecke the seventy shares finally purchased from the estate of Henry Franke, for the sum of $205.17 per share, with the understanding that the company declare a dividend to allow them to pay for the same." Messrs. Milliken and Hartley, two of the proposed purchasers, voted in favor of this resolution, and Mr. Bass voted against it. This was likewise true of the subsequent regulation, adopted on the same day, and which provided that "we declare a dividend of $87.38 per share, so as to allow Messrs. Milliken, Hartley, and Mecke to pay for the seventy shares; Messrs. Alexander Bass, W. L. Bass, and Mrs. W. L. Bass to apply their dividend toward liquidating the debt of Mr. W. L. Bass, Consuelo mortgage." It thus appears that Messrs. Milliken and Hartley, occupying a fiduciary relation to the other stockholders of the defendant corporation, were voting dividends to themselves to pay for the stock which belonged to all in common, and this, so far as the evidence goes, without any consent on the part of the stockholders generally, except as to the price which was to be paid for the stock. At the time the consent to the sale of the stock was given no dividends had been declared, and the natural presumption would seem to be that the sale contemplated the stock as it stood, not with dividends declared at the option of the purchasing parties and added to the stock, but the stock as it existed at the time of the agreement.

The rule is well established that no man can be a vendor and a purchaser at the same time (Hill on Trustees, p. *160); nor will it permit him, as a director of a corporation, to be beneficially interested in transactions which are against the common interests of the corporation (Redhead v. Parkway Driving Club, 148 N. Y. 471, 474, 42 N. E. 1047, and authority there cited). It is true that contracts of this nature, in a purely private corporation, are not void, but voidable, at the election of those who are affected by the fraud. Skinner v. Smith, 134 N. Y. 240, 242, 31 N. E. 911, and authorities there cited. In the case now before us, Mr. Bass, as one of the interested parties, not only refused to acquiesce in the vote, but he offered a resolution, which was defeated by the votes of the two interested directors, that the company "declare a dividend for an amount suitable for Messrs.

Milliken, Hartley, and Mecke to take over the seventy shares, and what may be to the credit of Mr. Alexander Bass, Mr. W. L. Bass, and Mrs. W. L. Bass to be credited to the Consuelo account." The interpretation of this resolution, as afforded by the subsequent action of the corporation, was that it was proposed that a dividend be declared upon the active stock sufficient to enable the plaintiff and the other proposed purchasers to pay for the 70 shares out of the dividends upon the shares that they then held, and that this enlarged dividend to the other stockholders should be used in discharging an individual indebtedness to the corporation owed by W. L. Bass; that is, if the dividend had been fixed at $132 per share, it would have resulted in $17,952 upon the 136 shares owned by Messrs. Milliken, Hartley, and Mecke, while the agreed price of the 70 shares, $257.17, would have aggregated a trifle over $18,000, and the other stockholders, instead of making the plaintiff and his fellow purchasers a present of $87.38 per share upon 70 shares of stock, would have realized a considerable sum of money or credit in the discharge of the obligations of W. L. Bass. However this may be, no transfer of the stock appears to have been made under the resolutions adopted as above set forth; but on the 25th day of November, 1896, at a meeting of the directors, it was moved by W. L. Bass "that with the various letters at hand from Mr. Alex. Bass affording his approval, and with Mr. W. L. Bass' letter of November 25, 1896, at hand, affording his approval, a dividend be declared, so that the seventy shares at present unissued can be taken up by Messrs. Milliken, Hartley, and Mecke, and that the annual report will show all stock outstanding in full, that portion of dividend accruing from Messrs. Milliken, Hartley, and Mecke's interests to go towards paying for the seventy shares, that portion of dividend accruing from Mrs. Bass and Mr. W. L. Bass' interests to be credited to the Consuelo indebtedness, while that portion of the dividend accruing from Mr. Alexander Bass' interest be held in suspense awaiting more definite instructions prior to crediting Consuelo account," etc. This resolution appears to have been accepted unanimously, though the record does not declare it to have been adopted, and must be deemed to have superseded the resolution of October 22d, under which no action had been taken. This resolution, in its essential particulars, so far as this controversy is concerned, is to the same effect as the defeated resolution of October 22d; it does not name the amount of the dividend, nor does not declare any intention of extending the dividend to the shares of stock which were about to be issued. The language of the resolution is that "that portion of dividend accruing from Messrs. Milliken, Hartley, and Mecke's interests [the interests which belonged to them when the resolution was adopted] to go towards paying for the seventy shares." It seems, however, that Alfred Mecke, one of the purchasers, acting under the directions of Mr. Milliken, credited each of the stockholders with a dividend of $87.39 upon the books of the corporation, including the 70 shares which had been transferred to Messrs. Milliken, Hartley, and Mecke under date of December 1, 1896. Things appear to have remained in this situation until July, 1898, when a settlement took

place between W. L. Bass and the defendant corporation, and the bookkeeper, under the orders of the president and Mr. Milliken, secretary and treasurer, amended the dividend of December, 1896, making it $132 and some cents per share upon the stock which was actually issued at the time of the declaring of the dividend of November 25, 1896, thus conforming the transaction to the theory of W. L. Bass and to the requirements of justice. The resolutions of October 22, 1896, in view of the manner of their adoption and what subsequently transpired, are without any force or effect. They could not afford the basis of any action on the part of Mr. Mecke in making the entries of credit to himself and his fellow purchasers in December, 1896, and the dividend directed in November was upon the interests of the several stockholders as they appeared before the transfer of the 70 shares of stock to the plaintiff and others, and was purely a matter of mathematics. The dividend was to provide a sum of money, based upon the interests of Messrs. Milliken, Hartley, and Mecke, to enable them to purchase these 70 shares of stock, not to make them a present.

The determination of the learned trial court that the plaintiff had failed to establish his right to share in the dividend upon the 20 shares of stock which were transferred to him in December, 1896, is justified by the evidence, and the judgment appealed from should not be disturbed.

The judgment appealed from should be affirmed, with costs.

BARTLETT and HIRSCHBERG, JJ., concur.

HOOKER, J. (dissenting). This action is brought to recover the amount of a dividend on 20 shares of the plaintiff's stock in defendant corporation, which he claims was declared in the year 1898, and not paid to him. The defendant contends that in the year 1898 no such dividend as the plaintiff insists upon was declared by the defendant. The action was tried before the court without a jury.

The undisputed evidence in the case established these facts: That in the month of October, 1896, the defendant found itself lawfully possessed of 70 shares of its own capital stock, which it had purchased from the estate of one Franke, deceased; that some talk was had between the several stockholders in relation to disposing of this stock to the stockholders Milliken, Mecke, and this plaintiff, and that the directors of the defendant held a meeting on October 22, 1896, when Milliken and this plaintiff favored declaring a dividend of $87.39 per share upon the capital stock of the defendant so as to allow themselves and Mecke to purchase, at $257.17 each, the said 70 shares known as the Franke stock. For some reason one of the stockholders opposed this action. On November 25, 1896, at a meeting of the stockholders, the matter was under consideration again, and, although done with a degree of informality, it was resolved by the board of directors that "a dividend be declared, so that the seventy shares at present unissued can be taken up by Messrs. Milliken, Hartley, and Mecke." The resolution further provided that the portion of the dividend accruing from the interests of Milliken, Mecke, and the

plaintiff should go toward paying for the 70 shares, and that the dividends accruing from the interests of all the other stockholders should be credited to an indebtedness of one of them to the defendant, known as the Consuelo indebtedness. At that time letters consenting to this whole action were filed on behalf of all the stockholders who were not present at the meeting, and those who were present gave verbal assent.

It is to be noticed that the resolution did not name any sum which should be paid by the defendant as a dividend upon the shares of its stock, although all of the stockholders consented to the declaring of a dividend to enable Milliken, Mecke, and the plaintiff to pay for the stock which they were then acquiring, nor was a price for the stock named; but the books of the corporation are in evidence, showing that the account of each stockholder was, on the 1st day of December, 1896, credited with a dividend of $87.39 per share. Of the 70 Franke shares, Milliken took 48, Mecke 2, and the plaintiff 20, and their accounts are charged with the purchase price of such shares, respectively, at $257.17 per share.

The entries so made in the books of the company remained unobjected to and unchanged for nearly two years. In July, 1898, some of the other stockholders raised an objection to the amount of the dividend of December 1, 1896, and claimed that as the entries appeared upon the books of the company the three stockholders who acquired the Franke shares were given the benefit of $87.39 dividend upon the shares of stock they were then acquiring, as well as upon the stock of the defendant which they held prior to the acquisition of the Franke stock, and they insisted that the accounts of all the stockholders be changed so these three stockholders should not reap the benefit of my dividend on the 70 Franke shares. In other words, they claimed that the Franke stock was sold "ex dividend," whereas the books of the defendant showed it to have been sold "dividend on."

A meeting of the directors was held on July 12, 1898, but no formal action was taken in relation to correcting the books in the particular indicated, although the matter seems to have been discussed. There is no evidence that any resolution or direction was made to that effect, but one of the stockholders, who considered himself aggrieved by the sale of the Franke shares of stock with the dividend on, directed the bookkeeper to enter as of the date December 1, 1896, a revision of the $87.39 dividend, so as to make the dividend appear to have been $132.367 per share, and directed him to amend the accounts so that no dividend should appear to have been allowed upon the Franke stock. These changes were made on the books, with the result that the credit of this dividend upon the shares of stock owned by the three stockholders in question, prior to acquiring their portion of the 70 shares, was about equal to a sum sufficient to pay for their respective shares of the Franke stock acquired December 1, 1896, at $257.17. The impossibility of adjusting the amount of this amended dividend so as to balance the accounts of the purchasers led to a credit of $6.29 on the plaintiff's account, and the defendant forwarded him a check for that sum, which he retained without using, promptly

demanding a credit of $132.367 upon each of the 20 shares he purchased in December, 1896.

These new entries in the books, of course, gave all of the stockholders except Milliken, Mecke, and the plaintiff a dividend much larger than they received in 1896, and this division of profits, made informally by the entries in the books, did not materially benefit Milliken, Mecke, or the plaintiff. The dividend of December, 1896, was about $42,000, while the amendment sought to be made in July, 1898, entailed a division of some $54,000, thus dividing in 1898 for the first time about $12,000 of profits. From the 12th of July, 1898, to the time of the commencement of this action, in October, 1900, none of the stockholders objected to this revision of the dividend of 1896 except the plaintiff. It appears from the dividend that Milliken and Mecke acquiesced in it by either paying or accepting in cash the small difference in the balancing of their accounts owing to the new rate of dividend. The plaintiff, however, has ever since July, 1898, objected to the revision of the prior dividend, and has insisted that he is now and always was entitled to a dividend upon the 20 shares of Franke stock he bought from the defendant in December, 1896; that the attempted revision of the dividend of December, 1896, was actually a division of profits upon the basis of a dividend upon each share of stock amounting to a sum equal to the difference between the dividend as made, $87.39, and as sought to be amended, $132.367. The defendant insists that the intention in 1896 was that the 70 Franke shares of stock should be sold by the company without the dividends then declared, and that the purchasers should not enjoy the fruit of that dividend by reason of their ownership of that block of stock; but there is in the case no direct evidence whatever, either documentary or otherwise, offered by either party, as to what the intention of the parties was at that time, and the resolutions and the other documentary evidence are also silent upon the question. There being no direct evidence of the intention of the parties in November, 1896, what that intention was must be gathered, if possible, from the course of dealing and the circumstances.

The court dismissed the complaint on the merits, on the ground that the Franke stock was unissued, and it should not be found, without affirmative evidence, that it was the intention to declare a dividend on such unissued stock. I think it must be held that the entries made December 1, 1896, remaining unchanged for one and one-half years, although no claim is made that the books were not open to the inspection of all the stockholders, established the fact that the intention of these parties in November, 1896, was to sell the Franke stock with the dividend declared on the 1st day of the month following. The defendant had the power to sell the stock, and how it was to be sold was a question of intention. The City Bank of Columbus v. Bruce and Fox, 17 N. Y. 507. The direction to the bookkeeper on July 12, 1898, to make changes in the books as of the 1st day of December, 1896, was therefore unauthorized and improper; but it appears that all the stockholders except the plaintiff acquiesced in this action. Milliken and Mecke sanctioned the amendment by actually adjusting the bal-

ances of their accounts reached upon the basis of this unauthorized change, and all the other stockholders except the plaintiff received and accepted the benefit of the large credits upon their accounts. These acts cannot be construed otherwise than to be a division of the profits of the defendant company upon the basis per share of the difference between $132.367 and $87.39, or $44.977.

It has been said that "a division of profits without the formality of declaring a dividend is equivalent to a dividend. A division of the profits is a dividend, even though not called such, and not considered such by the directors and stockholders." 2 Cook on Corporations (4th Ed.) § 534; Rorke v. Thomas, 56 N. Y. 559, 564. I believe this to be a correct statement of law as applicable to this case, in which the division of profits was unobjected to by all the stockholders, and actually instigated by one who, as the evidence shows, represented a class which would profit substantially by such a division.

Reaching the conclusion, therefore, that the $12,000, divided for the first time in July, 1898, was a dividend, the rule applies "that every shareholder of the same class is entitled to the same pro rata dividends from the profits of the corporation." 9 Am. & Eng. Ency. of Law (2nd Ed.) 683. And it must be held from the evidence as it is presented in the record that this division of profits was a dividend of $44.977 upon each share of stock, and that plaintiff was entitled to maintain an action for that sum upon each of his 39 shares.

These views lead to the conclusion that the judgment should be reversed, and a new trial granted, costs to abide the event.

JENKS, J., concurs.