(63 Misc. Rep. 203.)

MOSES v. SOULE.

(Supreme Court, Trial Term, Fulton County. April, 1909.)

1. CORPORATIONS (§ 376*)—RIGHT TO PURCHASE THEIR OWN STOCK.
    In the absence of statutory prohibition, a corporation may purchase its own stock, hold it unextinguished, and reissue the same.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. § 376.*]

2. CORPORATIONS (§ 376*)—RIGHT TO PURCHASE THEIR OWN STOCK—STATUTORY PROVISIONS.
    Stock Corporation Law (Laws 1890, p. 1066, c. 564, as amended by Laws 1901, p. 965, c. 354, § 1) § 23, authorizing a corporation to accept its own stock in payment of debts deemed bad, does not inferentially forbid it to purchase its own stock; but the inference, if any, is to the contrary.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. § 376.*]

3. CORPORATIONS (§ 376*)—PURCHASE OF THEIR OWN STOCK—VALIDITY.
    A purchase by a corporation of its own stock was legal, where no creditor was affected, the transaction was concurred in by all the directors

---

and stockholders, and the stock was received by the corporation into its treasury for sale to others.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. § 376.*]

**4. CORPORATIONS (§ 471*)—MORTGAGES—VALIDITY—REDUCTION OF ASSETS BELOW CAPITAL.**

That by the execution of a bond and mortgage the directors reduced the assets below the capital does not make the bond and mortgage void; but as provided by Stock Corporation Law (Laws 1890, p. 1066, c. 564, as amended by Laws 1901, p. 965, c. 354, § 1) § 23, the directors are liable to the corporation and creditors for the loss, if any, caused thereby.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 471.*]

**5. CORPORATIONS (§ 560*)—ACTIONS—SUFFICIENCY OF EVIDENCE.**

Evidence, in an action by a receiver of a corporation to cancel a bond and mortgage given to secure payment for its own stock, *held* not to sustain a finding that the sale of the stock was to the other stockholders as individuals and not to the corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 560.*]

**6. CORPORATIONS (§ 113*)—POWER TO PURCHASE THEIR OWN STOCK.**

A provision in incorporation articles or by-laws that a stockholder shall not sell without first giving the corporation and other stockholders opportunity to purchase is not against public policy.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 468; Dec. Dig. § 113.*]

Action by Joseph Moses, as receiver of J. Lebenheim & Sons Company, against Harry C. Soule. Judgment for defendant.

Smith & Moyer, for plaintiff.

George H. Witherhead, for defendant.

SPENCER, J. The plaintiff was appointed receiver in voluntary proceedings for the dissolution of the corporation named in the title to this action, and brings suit in equity to have declared void a sale of stock by a stockholder to the corporation, and to declare void a bond and mortgage securing the payment, and a loan of money to the corporation. The complaint does not allege that these transactions were fraudulent, or made to give a preference to the defendant, or in collusion against the corporation or creditors; but rests his right to recover on the sole ground that such transactions were illegal and void. As each event is challenged, it will be advisable to discuss them separately and in the order in which they took place.

On or about the 19th of October, 1904, Joachim Lebenheim and his two sons, James B. and F. William, and the defendant, Soule, united as incorporators in forming a stock corporation by the name of "J. Lebenheim & Sons Company." The capital stock was $30,000, divided into 300 shares of $100 each. Of this Joachim subscribed and paid for 40 shares; James B., 40 shares; F. William, 40 shares; and the defendant, Soule, 55 shares. The remaining shares were never sold and are still held in the treasury. Each stockholder was elected a director. Soon after such incorporation the company purchased certain real estate upon which was a building intended for the manufacture of leather, and the company entered upon that business therein. About July 1, 1905, the defendant, Soule, for some reason which does

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not appear, desired to dispose of his stock in the corporation, and it was agreed by all the directors, constituting all the stockholders, that the company purchase his stock, and there was then paid to him the sum of $500 to apply on such purchase. It was further agreed by them all that he should hold possession of the stock certificates as security for the payment of the balance. This is the first event challenged by the plaintiff as ultra vires. The question of the power of a corporation to purchase its own stock from one of its stockholders has been decided in nearly every state, and, while the decisions are not in accord, a large majority are in support of the doctrine that corporations have this power. Writers on the laws of corporations are also at variance upon this question; but I think it will be useless to cite or discuss these authorities and will confine this opinion to the decisions and statutes of this state.

It was in 1858 that the New York Court of Appeals promulgated the doctrine that, in the absence of prohibition by statute, a corporation may purchase its own stock, hold it unextinguished, and reissue the same. City Bank of Columbus v. Bruce, 17 N. Y. 507. Although this decision was made in regard to Ohio corporations, it announced a general principle in no way influenced by local statute. It has ever since been recognized, followed, and adopted by the courts of this state. Vail v. Hamilton, 85 N. Y. 453, 458; Rogers v. New York & Texas L. Co., 134 N. Y. 197, 213, 32 N. E. 27; Quee Drug Co. v. Plaut, 55 App. Div. 87, 67 N. Y. Supp. 10; Booth v. Dodge, 60 App. Div. 23, 69 N. Y. Supp. 673; Rogers v. Phelps, 56 Hun, 649, 9 N. Y. Supp. 886; First National Bank v. Commercial Travelers' Home Association, 108 App. Div. 78, 95 N. Y. Supp. 454.

The only case in which a contrary view finds expression is that of Barton v. Port Jackson Plank Road Co., 17 Barb. 397–407, decided in 1854, in which Mr. Justice Allen says that, in his opinion, it is against public policy to permit a corporation to purchase its own stock. There has been a great multiplication of corporations since the days of that justice; but it cannot be said that even now there is any public policy in regard to this subject. It is difficult to seriously entertain the view that the public was ever much concerned in the subject, especially in days when corporations were few and confined to plank and turnpike roads. It is, however, worthy of note that, although the Barton Case has been frequently cited, it has never, so far as I can find, been referred to on this question. It may also be remarked that, four years subsequent to the decision of the Barton Case, the Court of Appeals, in the Bank of Columbus Case, supra, without referring to the Barton Case, unanimously decided the question directly contrary. The court then had, for its Chief Judge, Alexander S. Johnson, and among its members were Judges Comstock, Selden, and Denio.

It appears that, by section 23 of the stock corporation law (Laws 1890, p. 1066, c. 564, as amended by Laws 1901, p. 965, c. 354, § 1), it is expressly provided that a corporation may accept and receive its own stock in payment of debts deemed bad or doubtful by its directors. Stock so received is not canceled, but returns to the treasury for sale to others. No inference may be drawn from this provision that

a corporation may not purchase its own stock; but the implication, if any, is to the contrary. I am of the opinion that the case City Bank v. Bruce, supra, is such high authority that this court must follow that decision.

It is contended by the plaintiff that the provisions of the stock corporation law, enacted since the City Bank Case was decided, do away with the force of that decision and amount to a prohibition as to such transactions. There is no claim that there is any express prohibition in the statute; and, if one exists, it must be inferred. As the rule adopted by the Court of Appeals had been in operation for over 40 years prior to the enactment, it may be presumed that the Legislature, if it intended to abrogate the rule, would have done so in clear terms, and not left it to inference.

The general laws have two chapters on corporations, one called the "general corporation law," and one the "stock corporation law." By sections 11 and 12 of the general corporation law (Laws 1890, p. 1060, c. 563, as amended by Laws 1894, p. 839, c. 400, § 1, and Laws 1895, p. 450, c. 672, § 1), several prohibitions were enacted, as well as powers granted; but a careful examination of those sections reveals no allusion to the subject under consideration. Those sections always have been understood as having no reference to the internal affairs or business transactions of corporations, but as intended to limit each corporation to the general business for which it was incorporated. Reference is also made to the provisions of section 23 of the stock corporation law, in regard to the liability of directors for making unauthorized dividends. This section includes, no doubt, other matters than the declaration of dividends, and it is claimed by plaintiff that the transactions in question fall within the scope of those provisions; but, admitting that such is the case, the transactions which so violate any of those provisions are not made void, but subject the directors taking part therein to personal liability to the corporation and creditors for losses they may sustain thereby.

I am therefore of the opinion that the purchase of the defendant's stock was legal and legitimate and may not be regarded as illegal or void. There was no creditor to be affected, the transaction was concurred in by all the directors and stockholders, and the stock was received by the corporation into its treasury for sale to others. The defendant by that transaction ceased to be a stockholder in the corporation, although he held the certificates as security for the payment of the balance remaining unpaid on the purchase.

To resume the history of the events, it appears that, after the transactions above narrated, the three Lebenheims continued the business as sole stockholders, and that on or about August 1, 1907, they were in need of money and, not being able to get a loan without an indorser, applied to defendant to indorse a note for the sum of $1,000 This the defendant agreed to do, provided the company execute and deliver to him a bond with mortgage upon its mill property for $6,000, as security for the payment of the $5,000 unpaid on the stock and the note. This was also agreed to by all the directors and stockholders and the bond and mortgage mentioned in the complaint were in due form of law executed and delivered to the defendant, who indorsed

the note and transferred the certificates of stock. The mortgage was duly recorded, and defendant paid the note. I think there is no occasion for any extended comments on this transaction. If the purchase of the defendant's stock, in July, 1905, was a valid transaction, there arose an indebtedness to the defendant for the balance unpaid. As to the $1,000 borrowed, the defendant paid the note, and that also became a debt owing him. The transaction of the bond and mortgage is not challenged as fraudulent or collusive, or as given with intent to give the defendant a preference, and there is no allegation or proof that there was, at that time, any creditor of the corporation save the defendant.

The plaintiff claims that, by the execution of the bond and mortgage, the directors of the corporation reduced the assets below the amount of the capital. As to this claim little need be said, except that if it be so it does not make void the instruments, as they were given for honest debts; but, as provided in section 23 of the stock corporation law, the directors become thereby liable to the corporation and creditors for the loss, if any, caused thereby. I am therefore of the opinion that the bond and mortgage are legal and may not be judged otherwise.

It further appears that in June, 1908, the buildings on said property were destroyed by fire, and, although well insured, the insurance inured to mortgagees to the extent of the mortgages. This misfortune led the stockholders of the company, consisting of the three Lebenheims, to take proceedings for the voluntary dissolution of the corporation. That such a misfortune should impair the credit and perhaps render the corporation insolvent may be assumed; but this event does not affect the transactions which antedated such disaster, or benefit creditors who became such as a result of the loss.

The evidence will not sustain a finding that the sale of the stock by defendant was to the stockholders as individuals, and not to the corporation. The defendant indorsed the certificate in blank in July, at the time of the purchase. The corporation paid him interest from that time until the mortgage was executed. So says plaintiff's witness James B. Lebenheim, and there is no contradiction; the defendant saying that all the transactions were with the corporation.

In the management of corporations few things are more apparent than the desire to keep the control of the same in the hands of people who are congenial to the enterprise and to those who manage its affairs. A quarreling directorate is a misfortune to the stockholders of any corporation. When such situations occur, as they often do, there is no objection to the purchase by the corporation of the shares of the disgruntled stockholders and the resale of the stock to those more in harmony with the enterprise. In the organization of corporations it is frequently provided in the articles or by-laws that a stockholder shall not sell his stock without first giving a stated period within which the corporation and the other stockholders may have opportunity to purchase. I find nothing in all this against public policy. On the contrary, it has to do solely with common sense and practical business.

If I am correct in the views expressed, it follows that judgment must be directed for a dismissal of the complaint, with costs.

Let findings of fact and conclusions of law be prepared in harmony with this opinion and presented for signature.

Judgment accordingly.