## STRODL v. FARRISH-STAFFORD CO.

(Supreme Court, Appellate Division, First Department.   June 9, 1911.)

1. EVIDENCE (§ 35*)—JUDICIAL NOTICE—LAWS OF OTHER STATES.
    The court cannot take judicial notice of the statutory law of another state.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51;  Dec. Dig. § 35.*]

2. CORPORATIONS (§ 82*) — CONTRACTS — CONTRACTS TO REPURCHASE OWN STOCK.
    A corporation's contract with a person entering its employ that, in consideration of the employé's subscription to stock, it will buy back the stock subscribed for at par value in the event of the employé's leaving, is valid.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 285–295;  Dec. Dig. § 82.*]

3. CORPORATIONS (§ 515*)—ACTION—PLEADING—DEFENSE OF ULTRA VIRES.
    Where a corporation is sued on a contract to buy back its own stock, the existence of statutory provisions rendering such contract ultra vires or of facts rendering it unenforceable are matters of defense to be pleaded and proved.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2082–2084;  Dec. Dig. § 515.*]

Appeal from Trial Term, New York County.

Action by Edward V. Strodl against the Farrish-Stafford Company. From a judgment dismissing his complaint, on motion for a nonsuit (67 Misc. Rep. 402, 122 N. Y. Supp. 609), plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Edward Kellogg Baird, for appellant.
Elbridge L. Adams, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. In the month of January, 1903, the plaintiff was in the employ of the Farrish-Stafford Company, a corporation organized under the laws of North Carolina. This action is based on a contract in writing with respect to the purchase of capital stock of the company which he made with it at that time. That corporation was succeeded by the defendant, which is a corporation organized under the laws of Connecticut in the year 1905; and, in consideration of the transfer to it of the assets and stock of the North Carolina corporation, the defendant assumed all of the contract obligations of its predecessor. This included the agreement between plaintiff and said North Carolina corporation. The plaintiff continued in the employ of the defendant until about the 1st day of February, 1908, at which time his connection with the corporation was severed. At that time the plaintiff held 28 shares of the stock of the par value of $100 per share, which he thereupon tendered back to the defendant and demanded that it accept the same and pay to him the sum of $1,400, being the balance owing to him after deducting from the par value of the stock a note for $1,400 held by the defendant; but the defendant refused the tender and demand. It does not appear whether the stock issued to the plaintiff pursuant to the terms of the agreement was an original issue of stock or was treasury stock. It was shown that at least 15 shares were issued to him by the defendant pursuant to the agreement, upon which the action is based, which is as follows:

"That for and in consideration of the covenants and promises contained in said Strodl's subscription for said stock, dated January 10, 1903, the said company hereby accepts said subscription, and has caused certificate to be issued accordingly, and for and in consideration of the payment of one dollar, the receipt whereof is hereby acknowledged, the said Strodl hereby agrees that, if at any time or for any reason, he should leave the employ of the company, he agrees to sell to said company at its par value, any and all stock he may hold in said company, upon the company's tendering payment therefor as above, and the said company further agrees to buy back said stock at its par value should the contingency herein provided for arise."

The subscription referred to in the agreement was not proved, nor was it clearly shown that the particular stock which the plaintiff held at the time he severed his connection with the company was the stock which he purchased from the company pursuant to the agreement; but perhaps that may be inferred, and no point is made that there is any defect in the proof with respect thereto. The plaintiff alleged and offered to show, but at the suggestion of the court that it was immaterial did not press the point or except, that the defendant at the date of said tender, and at the time of the trial, had surplus profits with which the stock might be repurchased in accordance with the agreement. Neither the statutes of North Carolina nor of Connecticut with respect to the authority of a corporation to sell its capital stock—either the original issue or treasury stock—conditionally or to repurchase the same, were proved. Manifestly the statutory law of this state bearing on the subject is not controlling. The validity of the contract and its enforceability against the defendant depend either on foreign statutes or on common-law principles.

[1] We cannot take judicial notice of the statutory law of another state, and, since it has not been pleaded and proved, the dismissal of

the complaint can only be sustained upon the theory that the contract is void at common law, which could only be on the theory that it is against public policy, for the defense of ultra vires can only be adjudicated on proof of the actual powers and authority of the corporation.

[2] That such a contract is not necessarily void as contravening public policy in any and all circumstances was long since decided by our Court of Appeals. City Bank of Columbus v. Bruce et al., 17 N. Y. 507, and numerous other decisions to sustain that doctrine; Vail v. Hamilton, 85 N. Y. 453; Booth v. Dodge, 60 App. Div. 23, 69 N. Y. Supp. 673; Joseph v. Raff, 82 App. Div. 47, 81 N. Y. Supp. 546, affirmed 176 N. Y. 611, 68 N. E. 1118; Moses v. Soule, 63 Misc. Rep. 203, 118 N. Y. Supp. 410; In re Castle Braid Co. (D. C.) 145 Fed. 224.

[3] In these circumstances, if there be any statutory law which rendered the contract ultra vires and void, or if it be unenforceable on the ground that the defendant had no surplus profits with which to repurchase the stock, then I think those were matters of defense to be pleaded and proved by the defendant. The question as to whether the contract was fully executed by plaintiff, and whether the defendant would be estopped from interposing the defense of ultra vires, are not presented for decision on this appeal, and no opinion is expressed thereon.

I am therefore of opinion that the plaintiff established a prima facie cause of action, and that the court erred in dismissing the complaint.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.