discussed, it unquestionably may not be regarded as one favoring defendants' contention.

Nor does the clause in question violate any rule of public policy. People ex rel. Browne v. Koenig, 133 App. Div. 756, 118 N. Y. Supp. 136. If the limitation in the charter is legal, it follows that the action of the majority of the stockholders, taken under the protest of the minority, was ineffective and of no binding force, and that the latter are entitled to an injunction pendente lite restraining the defendants from holding or causing to be held any election of a fifth director of the defendant United States Woven Label Company.

Settle order on notice.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, SCOTT, DOWLING, and MILLER, JJ.

B. F. Feiner, for appellants.
E. Lauterbach, for appellees.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of court below. Order filed.

---

### STEVENS v. OLUS MFG. CO.

(Supreme Court, Special Term, New York County. June, 1911.)

CORPORATIONS (§ 68*)—TRANSFER OF ASSETS TO STOCKHOLDER—VALIDITY.

An agreement by a corporation to transfer to a stockholder patent rights in exchange for his stock and resignation as officer is invalid, under Stock Corporation Law (Consol. Laws 1909, c. 59) § 28, prohibiting withdrawal of capital or reduction of capital stock, except as authorized by law, where the contract would involve withdrawal of 25 per cent. of the capital stock; it not appearing that the remaining patent rights equal in value the amount issued, or that the corporation would receive an equivalent in property for the rights transferred, or that the stock has any market value, or that there was a prior agreement to sell the stock received by the corporation at a price equaling the value of the rights transferred.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 181–183; Dec. Dig. § 68.*]

Action by William H. Stevens against the Olus Manufacturing Company. On demurrer to the complaint. Demurrer sustained.

A. George Maul, for plaintiff.
Wing & Russell, for defendant.

GIEGERICH, J. The action is brought to enforce a contract claimed to have been made between the plaintiff and the defendant company, whereby the latter agreed to assign to him certain patent rights in a stipulated territory, in return for which he was to turn over his stock to the corporation and resign as vice president and director of the company. The complaint alleges that the plaintiff conceived a certain new and useful improvement in the manufacture of garments, known as the "Olus garments," which the plaintiff disclosed to Edward J. Quigley, William Ehret, and Philip E. Heery, who were practical garment cutters; that said Edward J. Quigley and William Ehret

completed the said improvement by making a model of an Olus gar-
ment, and the said Edward J. Quigley applied for certain letters pat-
ent mentioned in the complaint, it being understood that the said Quig-
ley, Ehret, Heery, and the plaintiff were to share equally in the profits
and contribute equally to the expenses and losses; that thereupon the
plaintiff, for the purpose of equitably dividing the interests of the said
Quigley, Ehret, Heery, and the plaintiff in said letters patent, suggested
the formation of a corporation to hold said letters patent, manufacture
thereunder, and develop the same, and the defendant company was or-
ganized in the month of September, 1908, the letters patent assigned to
the defendant corporation, and stock therein issued to the persons above
named in equal proportions.  The complaint further alleges that after
some discussion by the board of directors the plaintiff's proposal was
accepted, and the company agreed to assign to the plaintiff certain
patent rights under the Olus patents enumerated in the complaint.  A
minute was made of the agreement in the minutes of the board of di-
rectors to the effect that the plaintiff had presented his resignation as
vice president and as a member of the company, which was to go into
effect by transferring his shares of stock to the company, and that the
company was to grant territorial rights to the plaintiff as a payment
for the same.  The complaint further alleges that the plaintiff, at the
defendant's request, had proper assignments of such territorial rights
prepared at his own expense, presented them for execution, and offered
to perform the agreement on his part, but that the company, by its of-
ficers and agents, failed to execute and deliver such assignments, and
that there is a breach of contract on the part of the other three stock-
holders in the company by refusing to carry out the contract with the
plaintiff, so that they could sell their stock interests to better advan-
tage.  The defendant has demurred to the complaint for insufficiency.

It appears from the allegations of the complaint that the patent rights
represent the face value of the capital stock of the company, and it
is manifest, from a reading of the complaint, that a withdrawal and de-
crease of the capital to the extent of the interest to be assigned, namely,
25 per cent., would take place if the contract were enforced.  This is
clearly a violation of section 28 of the stock corporation law (Consol.
Laws 1909, c. 59), which so far as applicable provides:

"The directors of a stock corporation shall not make dividends, except
from the surplus profits arising from the business of such corporation, nor
divide, withdraw or in any way pay to the stockholders or any of them any
part of the capital of such corporation, or reduce its capital stock, except as
authorized by law."

The term "capital stock," as used in the statute similar to the one
above quoted, has been construed to mean, not share stock, but the
property of the corporation contributed by its shareholders, or other-
wise obtained by it to the extent required by its charter.  Williams v.
Western Union Telegraph Co., 93 N. Y. 162; People ex rel. Wiebush
& Hilger Co. v. Roberts, 154 N. Y. 101, 106, 107, 47 N. E. 980; Peo-
ple ex rel. Commercial Cable Co. v. Morgan, 178 N. Y. 433, 439, 70
N. E. 967, 67 L. R. A. 960.

The plaintiff contends that if the agreement were enforced there
would be simply a reduced amount of stock outstanding, proportioned

to the patent rights of stock remaining, and hence there would be no real reduction of assets. This argument loses sight of the object of the provisions above quoted, which is to prevent the withdrawal of property which would reduce the value of the corporation's assets below the sum limited for its capital in its charter or articles of association. There is no allegation in the complaint that the remaining patent rights are equivalent in value to the amount of the share capital issued. Under the provisions above set forth, stock must represent property, and it is self-evident that, where part of the assets of a corporation are withdrawn, there is a corresponding reduction of its stock capital. There is no suggestion that the defendant was to receive an equivalent in property for the patent rights to be transferred.

The complaint does not allege that the stock has any market value, and unless it is shown that there was a prior agreement for the sale of this stock at a price which would make up in value the patent rights transferred, or that the defendant had a surplus of property corresponding in value to the patent rights to be transferred, the agreement sought to be enforced is void. The mere fact that the stock was to be put into the treasury of the company, that it might be sold to others, does not, therefore, meet these requirements. The present case is therefore distinguishable from Joseph v. Raff, 82 App. Div. 47, 81 N. Y. Supp. 546, affirmed 176 N. Y. 611, 68 N. E. 1118. There the president, pursuant to an agreement with the company, resigned and sold his stock to the corporation, and the person who was to succeed him agreed to purchase said stock from the company. Here we have no such situation.

It results, from these views, that the demurrer should be sustained, with costs. Settle decision on notice.